## STREET CAR PASSENGER INJURED WHILE RIDING ON THE BUMPER.

Court of Appeals for Franklin County.

McGINN v. THE COLUMBUS RAILWAY & LIGHT COMPANY.

Decided, March 20, 1913.

*Passenger on Crowded Street Car—Rides on Bumper and Was Injured—Passenger Not Chargeable with Negligence in so Doing, When.*

1. Where a street car and the platform thereof are crowded with passengers, it is not negligence *per se* for a person desiring to become a passenger to take a position upon the bumper of such car, when such person pays a fare and is otherwise recognized by the conductor in charge of such car as a passenger.

2. Where it is averred in the petition and there is testimony tending to prove the averment that the motorman in charge of a street car immediately following knew of the position of such passenger upon the bumper, or by the exercise of ordinary care could have known such fact, it was the duty of such motorman to exercise reasonable care to protect such passenger so riding upon the bumper. *The Columbus Ry. Co. v. Muns*, 6 C.C. (N.S.), 236, distinguished.

*Belcher & Connor*, for plaintiff in error.
*Booth, Keating, Pelers & Pomerene*, contra.

KUNKLE, J.

Plaintiff in error, John P. McGinn (being the plaintiff below), sought to recover judgment against defendant in error, the Columbus Railway & Light Company (being the defendant below), in the sum of $10,300 for damages alleged to have been sustained by reason of the negligence of defendant in error in the operation of one of its street cars in the respects stated in detail in the petition.

Upon the trial of the case, at the conclusion of the testimony of plaintiff in error, the trial court directed the jury to return a verdict in favor of defendant in error.

Plaintiff in error claims that the trial court erred in directing such verdict.

The court evidently based its decision upon the case of *Columbus Ry. Co.* v. *Muns,* 6 C.C.(N.S.), 236, an opinion by the circuit court of this district.

In the Muns case it appears from the opinion of the court that the conductor in charge of the car did not see Muns or know of his position upon the bumper. He did not collect fare from Muns or do anything which recognized him as a passenger upon the car in question. It further appears from the opinion of the court that the manifest weight of the evidence was to the effect that there was room in the car, and that Muns did not attempt to get upon the steps or platform. It also appears that the officials of the company did all that was within their power to stop the descending car for the purpose of preventing injury to Muns. It is apparent from this decision that the court did not consider that the rule known as the "last chance" was involved in the case.

In the case at bar plaintiff in error, with a number of his friends, attempted to board a C., D. & M. car at Third avenue and Summit street, in this city. On account of the crowded condition of the car some of the party went to the front of the car but could not get on and then returned to the rear of the car. Three of the party succeeded in getting on the rear steps of the interurban car, and the other four, including the plaintiff, got on that portion of the car known as the bumper.

When they boarded the interurban car one of the cars of the defendant company, being the car which subsequently collided with the interurban car and injured the plaintiff, was a short distance behind the interurban car. The testimony differs as to the distance which the said city car was from the interurban car at this time. Plaintiff says it was about ten feet. Other witnesses place it at a greater distance.

The accident occurred at the corner of Seventh avenue and Summit street on October 16, 1910, at about 9 o'clock A. M. It was a bright, clear day. There was testimony to the effect that the interurban car had made several stops between Third avenue and Seventh avenue for the purpose of receiving and discharging passengers.

It is apparent from the testimony that the interurban car was crowded at the time plaintiff and his companions boarded the same. One of the witnesses described it as being loaded to the steps. The witnesses substantially agree that the car was so crowded that but three of the party were able to get on the steps, and that the other four members of the party, including the plaintiff, got upon the bumper because of their inability to get in the car.

The witness Doebele, who was riding with the plaintiff, says he paid his fare to the conductor. The plaintiff testifies that he paid the conductor a five-cent fare. The other two members of the party, who were riding on the bumper at a different place, did not pay their fare. Plaintiff was asked, on page 35 of the record:

"Q. Did the conductor see you and your companions who were standing outside the vestibule? A. Yes, sir.

"Q. I will ask you to state whether he collected a fare from you or not? A. Yes, sir.

"Q. Do you know what you paid? A. Five cents."

On pages 37 and 38 of the record the plaintiff testifies:

"Q. Did you see this Summit street car when you stopped at Fourth and Summit? A. Yes, sir.

"Q. Just tell the jury what that car did and what happened there. A. Well, the conductor got off there, off of our car, and his car ran up pretty close.

"Q. Whose car ran up pretty close? A. The city car.

"Q. The Summit street car? A. Yes.

"Q. Go on. A. The Summit street car ran up pretty close to us, and the conductor got off and started to tell him not to get so close.

"Motion by the defendant to strike out the answer.

"The Court: I would be inclined to say if the motorman's attention was called to the danger of running into the car, it would be competent, if he heard it.

"Witness: Yes, sir.

"The Court: You may state what he said to the motorman.

"Witness: Well, he told him to stay back a little. That is all I heard. I did not pay any more attention to it.

"Q. Did the conductor from your car say anything else to the conductor or the motorman on the rear car, and if so,

what was it? A. Well, if I could understand right, he told him he had a big load; to kindly stay back.''

The plaintiff also testified that when he got on at Third avenue, he motioned or signaled the motorman in charge of the city car to stay back.

''Q. When you made those motions or at any time, did you see the motorman on the Summit street car looking at you? A. Right at me, yes, sir.

''Q. How far were you from him when you made those signs or motions? A. I judge about ten feet; can't tell exactly.''

The plaintiff also testified as follows in regard to the accident (page 42 of the record):

''Q. When was the first time you saw that car during your stop or at your stop there at Seventh avenue and Summit street? A. Why, it was just—I just happened to look around; just like that; just looked around.

''Q. Over your shoulder? A. Over my shoulder, and I says: 'Lay in fellows.' I says, 'We are up against it.' Just like that, and we laid in as close as we could.

''Q. And how close was the Summit street car to you when you saw it? A. Well, it just hit when I said that; just when I leaned over.

''Q. I will ask you to state whether or not from the moment you saw the Summit street car, just before it ran into you, up until you were struck, you had time to jump and get out of the way or to escape the danger? A. No, sir.''

In the case at bar there is testimony tending to show that plaintiff and at least one of his companions, while riding on the bumper, were treated by the conductor as passengers on the car; that fare was collected from plaintiff and one of his companions; that the car was in such a crowded condition that the plaintiff could not have gotten either in the car or upon the rear steps thereof; that the interurban car was in plain view of the motorman in charge of the city car from the time the plaintiff boarded the interurban car at the corner of Third avenue and Summit street until the collision at the corner of Seventh avenue and Summit street; that the interurban car was not only in plain view of the motorman in charge of the city car

during all this time, but that the conductor in charge of the. interurban car notified the motorman in charge of the city car, when at Fourth avenue, of the fact that he had a heavy load and requested the motorman in charge of the city car to stay back, and that the plaintiff signaled the motorman in charge of the city car to stay back when his car came close to the interurban car at Third avenue and Summit street.

Was the plaintiff below entitled to have the jury instructed in regard to the rule of law known as the "last chance"? Was he entitled to have this proposition submitted to the jury?

The only averment in the petition which would have warranted the submission of this doctrine was the following:

"That plaintiff and the car upon which he was a passenger were all of the time in plain view of the said motorman of said company, and said motorman saw plaintiff and said car, or by the exercise of ordinary care could have seen them, but said motorman negligently and carelessly failed and neglected to check the speed of said car in time to prevent said collision, although by the exercise of ordinary care he could have brought said car to a full stop without striking plaintiff or said car."

This paragraph of the petition contains the averment that the motorman saw plaintiff on said car, or by the exercise of ordinary care could have seen him. The averment is in the disjunctive. In the absence of a motion to make the petition more definite and certain the plaintiff was entitled under this averment to prove either that the motorman actually saw the plaintiff in his perilous position on the car, or by the exercise of ordinary care could have seen him.

There was testimony tending to show that the motorman in charge of the city car knew of the position of the plaintiff from the time he boarded the interurban car at Third avenue until the time of the accident.

In the case of *Drown v. Northern Ohio Traction Co.*, 76 Ohio St., 234, 249, the court, in discussing under what circumstances the "last chance" rule should be given, states:

"Since the plaintiff can recover only upon the allegations of his petition, if there is no charge in the petition that the defendant after having notice of the plaintiff's peril could have

avoided 'the injury to plaintiff and there is no testimony to support such charge, the giving of such a charge would be erroneous.''

The converse of this proposition must necessarily be true, viz., if there is a charge in the petition that the defendant had notice of the plaintiff's peril and could have avoided the injury, and there is testimony tending to show that the defendant had notice of the plaintiff's peril and could have avoided the injury, then such issue should be submitted to the jury under proper instructions.

In the case of *Erie R. R. Co.* v. *McCormick,* 69 Ohio St., 45, Judge Shauck, at page 53, defines the rule of law known as the ''last chance'' as follows:

''The concrete rule upon the subject is, that if one is upon the track of a railway company by his own fault and in peril of which he is unconscious, or from which he can not escape, and these facts and conditions are actually known by the engineer, it is his duty to exercise all reasonable care to avoid the infliction of injury.''

We think there is evidence tending to show that the plaintiff below, by reason of the previous signal which he had given the motorman, and by reason of the conversation which occurred between the conductor of the interurban car and the motorman of the city car with reference to the city car staying back, was entitled to assume that the motorman in charge of the city car would control his car and avoid a collision; that the first intimation he had that the motorman in charge of the city car would not keep his car under control was when the city car was about to collide with the interurban car and that the plaintiff was then unable to escape from the peril in which he was placed.

As above stated, we think, under the averments of the petition herein quoted, the plaintiff was entitled to show that the motorman in charge of the city car actually knew of his peril and could have avoided the injury by the exercise of ordinary care, and after having introduced evidence tending to establish

such facts, was entitled to have this question submitted to the jury.

Holding this view, the judgment of the lower court will be reversed and the case remanded for a new trial.

Judgment reversed.

ALLREAD, J., and FERNEDING, J., concur.