Takt, J.
 

 It is the contention of the plaintiffs that the trial court erred in failing to grant a new trial
 
 in toto.
 

 This court has held that a trial court, in vacating a verdict and granting a new trial on a single cause of action, is required to vacate the entire verdict of the jury, and that'the new trial must proceed
 
 de novo
 
 as to all the issues in the case.
 
 Edelstein, Admx.,
 
 v.
 
 Kidwell,
 
 139 Ohio St., 595, 41 N. E. (2d), 564.
 

 However, defendant contends that the law, as announced in the
 
 Edelstein case,
 
 is not applicable in the instant ease because here there are seven causes of action. Obviously, the plaintiffs’ statement of more than one cause of action in their second amended petition would be proper only if plaintiffs were at the time entitled to maintain more than one action to enforce their rights and claims as set forth in that pleading.
 
 Sturges
 
 v.
 
 Burton,
 
 8 Ohio St., 215, at 219.
 

 This raises the question as to whether, notwithstanding the fact that the second amended petition purported to state seven separate causes of action, more than one action might have been instituted by plaintiffs, at the time of the commencement of the instant action, to enforce the rights asserted in their second amended petition.
 

 Defendant contends that the agreement of the defendant, hereinbefore referred to, created continuing obligations; and that, for every breach of such obligations, a new right of action arose. However, it does not follow that,
 
 after
 
 several of such rights of action
 
 *550
 
 have
 
 arisen,
 
 more than one action may be instituted to enforce them.
 

 Thus, it is generally recognized that,
 
 after
 
 several of such rights of action have arisen, the injured party must include them all in any action brought or be barred from asserting, in a separate action, any right of action not so included.
 
 Kennedy
 
 v.
 
 City of New York,
 
 196 N. Y., 19, 89 N. E., 360, 25 L. R. A. (N. S.), 847;
 
 Jones
 
 v.
 
 Morris Plan Bank of Portsmouth,
 
 168 Va., 284, 191 S. E., 608. See
 
 Cockley
 
 v.
 
 Brucker,
 
 54 Ohio St., 214, 44 N. E., 590;
 
 Fox
 
 v.
 
 Althorp,
 
 40 Ohio St., 322;
 
 Strangward v. American Brass Bedstead Co.,
 
 82 Ohio St., 121, 91 N. E., 988; 1 American Jurisprudence, 489/491, Sections 107, 109. The reason for this rule is that the bringing of separate actions for each breach would be unnecessarily vexatious to the defendant and would give the plaintiffs no advantage. 5 Williston on Contracts (Rev. Ed.), Section 1292. Thus, causes of action, divisible and separate as they arise, may, after they have arisen, coalesce and, at least for some purposes, become inseparable and single.
 
 Green
 
 v.
 
 Petersen,
 
 218 N. Y., 280, 112 N. E., 746;
 
 Guardian Life Ins. Co.
 
 v.
 
 Johnson,
 
 186 Ark., 1019, 57 S. W. (2d), 555;
 
 State
 
 v.
 
 Davis,
 
 35 Mo., 406
 
 .
 

 This rule would seem to be particularly applicable with respect to an agreement to indemnify against damages such as that involved in the instant case. While technically a right of action arises at each time that damage covered by an indemnity agreement occurs, there is no valid reason which would justify a plaintiff in failing, in one action, to assert his claim for all the items of such damage for which he could seek indemnity and which have occurred prior to the commencement of such action
 

 ' In the instant case, a contrary rule might well have justified plaintiffs in further splitting the single cause of action, asserted in their second amended petition,
 
 *551
 
 by setting forth a separate cause of action with respect to each of the 12 hogs for whose loss recovery was sought in the third cause of action, and a separate cause of action for loss of each of the many trees involved in the claim with respect to timber found in the seventh cause of action. Followed to its logical conclusion, such contrary rule might even justify the assertion of a separate cause of action with regard to each bite taken by each one of plaintiffs’ cows and each one of their hogs (alleged to have gotten loose by reason of defendant’s activities) in consuming the corn and oats, for destruction of which recovery was sought in the first cause of action. Cf.
 
 Stein
 
 v.
 
 Steamboat Prairie Rose,
 
 17 Ohio St., 471, 478.
 

 However, paragraphs four and six of the syllabus in
 
 Vasu
 
 v.
 
 Kohlers, Inc.,
 
 145 Ohio St., 321, 61 N. E. (2d), 707, do tend to support the defendant’s contention that the separate causes of action, stated in the second amended petition in the instant case, were actually separate causes of action. It should be noted, however, that the plaintiff, in the
 
 Vasu case,
 
 had not been a party to the action brought by his indemnitor against the defendant; and, as indicated by paragraph eight of the syllabus in the
 
 Vasu case,
 
 the plaintiff was not, therefore, bound by the judgment against his indemnitor who had sought to recover from that defendant the portion of the plaintiff’s claim assigned to such indemnitor.
 

 It is further contended by defendant that plaintiffs, having accepted and acquiesced in a ruling of the trial court that seven separate causes of action were involved, may not now take the position that only one cause of action was asserted.
 

 The original petition and amended petition of plaintiffs purported, to assert a single cause of action. Defendant filed a motion requesting the court to order plaintiffs to amend by separately stating and number
 
 *552
 
 ing causes of action. That motion was sustained. It was,pursuant to the order of the court in sustaining that motion that plaintiffs endeavored to split the single cause of action into the seven causes of action set forth in the second amended petition. -
 

 In our opinion, the failure of plaintiffs, to include in their assignments of error any assignment with respect to the trial court’s order requiring them to separately state and number causes of action, should not interfere with assertion of their assignment of error with respect to the trial court’s failure to grant a new trial
 
 in tobo,
 
 even though the latter assignment of error is based on the contention that their second amended petition, notwithstanding its form, stated only one cause of action. While the order of the court, requiring the separate stating and numbering of causes of action, may have induced the court later to make the order granting a partial new trial, the prior order, in and of itself, apparently caused plaintiffs no prejudice other than that which they incurred in preparing their second amended petition. It is not necessary to pass upon the question whether the parties can, by agreement, split a cause of action or whether one party may be estopped from contending that a single cause of action is not several causes of action. We do not believe that the record discloses any such agreement or the basis for any such estoppel.. •
 

 It follows that the judgment of the Court of Appeals must be reversed and the cause remanded to the Common Pleas Court for further proceedings.
 

 In my opinion, the record and the plaintiffs’ assignments of error present a further question for consideration at this time. However, a majority of the members of this court are of the opinion that no other questions are presented for decision by this court at this time. Therefore, the remainder of this opinion represents merely the views of the writer of this opinion and not
 
 *553
 
 necessarily those of the other members of the court.
 

 Plaintiffs assigned as error the failure of the trial court “to grant a new trial
 
 in toto.”
 
 Therefore, a mere reversal, on the ground that if the trial court does grant a new trial in the instant case it must grant a new trial
 
 in toto,
 
 would be misleading. The trial court would undoubtedly conclude that its only alternative is to grant a new trial
 
 in toto.
 
 If that is not the only alternative, it is our duty to so state and thus prevent our judgment of reversal from being misleading.
 

 Apparently, the trial judge, in ordering a partial retrial of this cause, had the commendable objective of preserving as much of the jury’s verdict as he believed was not tainted with any error. That objective cannot be achieved in the instant case by the method which the trial court adopted. The question remains as to whether there is any proper method by which that objective can be achieved; and the parties, the witnesses and the state can thereby be enabled to avoid the inconvenience and expense which a new trial would involve. '
 

 If we do suggest a method by which that objective may be achieved, we must necessarily determine that such suggested method is a proper one.
 

 The same objective has heretofore influenced this court to support the practice of ordering a remittitur, with assent of a plaintiff, to reduce an excessive verdict not influenced by passion or prejudice or otherwise tainted by prejudicial error.
 
 Chester Park Co.
 
 v.
 
 Schulte, Admr.,
 
 120 Ohio St., 273, 166 N. E., 186, and cases cited therein. See, also,
 
 Bartlebaugh
 
 v.
 
 Pennsylvania Rd. Co.,
 
 150 Ohio St., 387, 82 N. E. (2d), 853. It may be observed that there is nothing in the record to indicate that the trial court based its decision on the conclusion that the verdict was rendered under the influence of passion or prejudice or that it was otherwise tainted with error.
 

 
 *554
 
 The same reasons which justify the remittitur practice might justify an increase of the verdict in the instant case by additur to an amount warranted by the evidence, if such increase is assented to by the defendant. See
 
 Chester Park Co.
 
 v.
 
 Schulte, supra,
 
 at 287. Since there is no bill of exceptions in the instant case, we do not know, from an examination of the record, whether the trial court could in that manner achieve its objective of avoiding a new trial, — an especially commendable objective where, as here, the answers to interrogatories clearly indicate that so much of the jury’s verdict has not been tainted with any error. If that objective can be properly achieved, we believe that the trial court should be given every opportunity to achieve it.
 

 The practice of ordering an additur, with the assent of a defendant, to increase an inadequate verdict not influenced by passion or prejudice or otherwise tainted by prejudicial error, is supported by judicial precedent.
 
 United States
 
 v.
 
 Kennesaw Mountain Battlefield Assn.,
 
 99 F. (2d), 830, certiorari denied, 306 U. S., 646, 83 L. Ed., 1045, 59 S. Ct., 587, See
 
 Kraas
 
 v.
 
 American Bakeries Co.,
 
 231 Ala., 278, 164 So., 565;
 
 Rudnick
 
 v.
 
 Jacobs,
 
 39 Del., 169, 197 A., 381;
 
 Gaffney
 
 v.
 
 Illingsworth,
 
 90 N. J. Law., 490, 101 A., 243;
 
 Clausing
 
 v.
 
 Kershaw,
 
 129 Wash., 67, 224 P., 573;
 
 Clark
 
 v.
 
 Henshaw Motor Co.,
 
 246 Mass., 386, 140 N. E., 593;
 
 Secreto v. Carlander,
 
 35 Cal. App. (2d), 361, 95 P. (2d), 476;
 
 Blackmore v. Brennan,
 
 43 Cal. App. (2d), 280, 110 P. (2d), 723, 728; note, 13 North Carolina Law Review, 514; note, 44 Yale Law Journal, 318, 323
 
 et
 
 seq.; 66 Corpus Juris Secundum, 512; Scott’s Fundamentals of Procedure in Actions at Law, 126
 
 et seq.
 

 However, as plaintiffs point out, the Supreme Court of the United States, in a five to four decision, held that this practice was contrary to the provisions of the 7th Amendment to the Constitution of the United
 
 *555
 
 States guaranteeing jury trials in the courts of. the United States.
 
 Dimick
 
 v.
 
 Schiedt,
 
 293 U. S., 474, 79 L. Ed., 603, 55 S. Ct., 296, 95 A. L. R., 1150. It is well settled that that constitutional provision applies only to the federal government and not to the state governments. 31 American Jurisprudence, 554. Therefore, while it may be persuasive, that decision is not a binding precedent on this court, with regard to the question as to whether the additur practice is in conflict with Section 5, Article I of the Constitution of Ohio, providing that “the right of trial by jury shall be inviolate.”
 

 The minority opinion in the
 
 Dimick case
 
 clearly points out that the reasons, for denying the power of a federal court to follow the additur practice, would require a holding denying the power of a federal, court to follow the remittitur practice. The majority dodges this obstacle by pointing out that the power of a federal court, with regard to the remittitur practice, was not involved in the
 
 Dimick case,
 
 although recognizing that the Supreme Court had previously approved the exercise of such power.
 

 Later, in
 
 United States v. Kennesaw Mountain Battlefield Assn., supra,
 
 the Fifth Circuit Court of Appeals unanimously held that the
 
 Dimick case
 
 was not applicable to prevent use of the additur practice where the only valid ground for a new trial was the inadequacy of damages, because the
 
 Dimick case
 
 was applicable to prevent use of the additur practice only where the verdict “was attended with serious (other) error for which a new trial ought to have been granted at common law.” (See especially page 834.)
 

 I am not impressed by the principal argument of the majority of the Supreme Court in the
 
 Dimick case
 
 that the additur practice is not proper because that practice does not appear to have had the approval of English authorities at the time of the adoption of the
 
 *556
 
 federal Constitution and must, therefore, necessarily be inconsistent with the right to a jury trial. Such argument denies the possibility of any change, development or improvement in practices with regard to jury trials, even though such practices do not appeal' to interfere in any way with the right to trial by jury, merely because such practices cannot be found in the fragmentary evidence which we have as to the state of development of the common law at a time over one and one-half centuries ago. Cf.
 
 Hoffman
 
 v.
 
 State,
 
 98 Ohio St., 137, 120 N. E., 234;
 
 Goldberg
 
 v.
 
 Emerman,
 
 125 Ohio St., 238, 181 N. E., 19. When the Constitution of the United States was adopted and when the Constitution of this state was adopted, the common law was something more than a miscellaneous collection of precedents. It was a system, then a growth of some five centuries, to guide judicial decision. One of its principles, certainly as important as any other, and that which assured the possibility of the continuing vitality and usefulness of the system, was its capacity for growth and development, and its adaptability to every new situation to which it might be needful to apply it.
 

 It may be suggested that the additur practice deprives a defendant of his right to a jury trial, including the right to have the jury determine the amount of his damages. The obvious answer to that contention is that the defendant can waive that right (see
 
 Hoffman
 
 v.
 
 State, supra),
 
 which he does when he consents to pay the additur, just as a plaintiff waives his corresponding right when he consents to a remittitur. Cf.
 
 In re Estate of Johnson,
 
 142 Ohio St., 49, 49 N. E. (2d), 950, and
 
 Bishop
 
 v.
 
 East Ohio Gas Co.,
 
 143 Ohio St., 541, 56 N. E. (2d), 164, where there were no such waivers.
 

 The principal argument against the additur practice is that it denies the plaintiff his constitutional right
 
 *557
 
 to a jury trial because that right includes the right to have the jury determine the amount of the plaintiff’s damages.
 

 Likewise, in opposition to the remittitur practice, the principal argument has been that the defendant is deprived of his constitutional right to have the jury determine the amount of damages that he must pay.
 
 Chester Park Co.
 
 v.
 
 Schulte, supra,
 
 at 286. In sustaining the constitutionality of the remittitur practice, it has been pointed out that that argument is not valid because:
 

 (a) Defendant will pay no more, and in fact less, than the amount which a jury did award by its verdict against him.
 

 (b) He will pay no more than a reasonable jury might award against him.
 

 (c) If the amount, after the remittitur, is more than that and so still excessive, the defendant can appeal on that ground. See
 
 Chester Park Co.
 
 v.
 
 Schulte, supra,
 
 at 280.
 

 Likewise, with regard to the additur procedure, the argument, that the plaintiff is deprived of his right to have the jury determine the amount of his damages, is invalid because:
 

 (a) Plaintiff will receive no less, but in fact more, than a jury did award him by its verdict.
 

 (b) He will receive no less than a reasonable jury might award him.
 

 (c) If the amount, after the addition, is less than that and so still inadequate, plaintiff can appeal on that ground.
 

 If the arguments, used to sustain the practice of remittitur as not depriving a defendant of his constitutional right to a jury trial on the amount of damages, are sound, then the corresponding arguments, used to sustain the additur practice, are also sound.
 

 To say that the arguments sustaining the remittitur
 
 *558
 
 practice are sound, while the corresponding arguments advanced to sustain the additur practice are not sound, necessarily leads to the absurd conclusion that a plaintiff has a greater right to a jury verdict, determining the amount of his damages, than does a defendant.
 

 In effect, both the remittitur and the additur practices uphold part of what the jury did. Under the remittitur practice, part of what the jury did is taken .away from the plaintiff with his consent. Under the additur practice, the whole of what the jury did is upheld and something in addition is given to the plaintiff with the consent of the defendant. Thus, it would appear easier to uphold the additur practice because, under it, all that the jury did is sustained. However, under each practice, the departure from what the jury actually did is consented to by the party prejudiced by such departure.
 

 Of course, where the amount of the verdict is so excessive as to indicate passion or prejudice or the verdict is - otherwise tainted, the remittitur practice is not applied. A similar limitation might also be made in applying the additur practice, where the amount of the verdict is so inadequate as to indicate passion or prejudice or the verdict is otherwise tainted. The remittitur practice is not applied where the amount of the verdict is so excessive as to indicate passion or prejudice for the reason that, if there is passion or prejudice, the jury probably erred to the prejudice of the defendant on some issue other than damages. See dissenting opinion of Matthias, J., in
 
 Chester Park Co.
 
 v.
 
 Schulte, supra,
 
 at 296. Such a reason for not applying the additur practice will almost never exist, because even an inadequate verdict usually decides all the issues in favor of the plaintiff. Here again, it appears that the difficulties of justifying the remittitur
 
 *559
 
 practice exceed the difficulties in justifying the additur practice.
 

 My conclusion is that, where the amount of a verdict is inadequate but not so inadequate as to indicate passion or prejudice and such verdict is not otherwise tainted with error, a new trial may be denied on condition that the defendant assents to an increase in the amount of the verdict to an amount which is more than the least that a reasonable jury would have awarded.
 

 I believe that this rule, just as does the practice with respect to remittitur, will frequently enable the trial court or a reviewing court to accomplish substantial justice, without awarding a new trial where a new trial might otherwise be required.
 

 Judgment reversed.
 

 Weygandt, 0. J., Zimmerman, Stewart, Middleton, Matthias and Hart, JJ., concur.