Taft, J.
I concur in paragraphs one and two of the syllabus and in the judgment and would concur in paragraph three of the syllabus if that paragraph were revised to reflect more fully the facts of the case being decided as, for example, by including in such paragraph after the words ‘ ‘ deleterious ingredients therein” the words “and the manufacturer knew before he sold it that the deleterious ingredients were in his product.”
Since the relief sought by plaintiff on each of her so-called (see Sicard v. Kremer, 133 Ohio St., 291, 295, 296, 297, 304, 13 N. E. [2d], 250; Markota v. East Ohio Gas Co., 154 Ohio St., 546, 97 N. E. [2d], 13; Gartner v. Corwine, 57 Ohio St., 246, 255, 256, 48 N. E., 945) three causes of action is the same, it is obvious that the Common Pleas Court may still give plaintiff all the relief sought, notwithstanding its ruling with regard to the so-called second and third causes of action and its so-called judgment of dismissal thereof. It would appear doubtful therefore whether there is yet any final order or judgment of the Common Pleas Court within the meaning of those terms as used in Section 6, Article IV of the Ohio Constitution, and thus whether the Court of Appeals had any jurisdiction of the subject matter. See Schindler v. Standard Oil Co., 162 Ohio St., 96, 120 N. E. (2d), 590. Although this court has frequently stated that such question of jurisdiction of the subject matter may be raised at any time during the course of a litigation and *251 that the parties cannot by consent confer upon a court a jurisdiction of a subject matter over which it has no jurisdiction, I suppose that a majority of this court can do so by its acquiescence in such consent, and hence, and especially in view of the importance of the questions of substantive law being considered by that majority, I bow to its will in acquiescing in the apparent desires of both parties to this litigation that we ignore any such procedural question.
Although it is difficult to find any allegations in plaintiff’s petition to indicate what express warranty is claimed to have been made by defendant, defendant apparently concedes that the allegations are sufficient to allege such a warranty; and those allegations describing the claimed breaches of express warranties will justify an inference that defendant expressly warranted that the product sold to plaintiff was one which would not cause harm when used for the purpose for which it was designed and intended. It is definitely alleged that it was so used.
The allegations of the so-called first cause of action of plaintiff’s amended petition are specifically incorporated in the so-called second cause of action “as if fully rewritten and contained” therein, a practice specifically approved by our statutes. See Section 2309.29, Revised Code. The allegations so incorporated include allegations that “defendant knew, or ought to have known in the exercise of ordinary care, that the preparation” bought by plaintiff “would cause harm.” Technically and logically and because of the disjunctive “or,” these allegations might be considered merely as allegations that defendant “ought to have known,” etc., and not that it “knew.” 41 American Jurisprudence, 317, Section 41. However, this court has apparently indicated that such averments in the disjunctive, in the absence of a motion, will enable proof of either knowledge or negligence in failing to know. McGinn v. Columbus Railway & Light Co., 4 Ohio App., 398, 404 (affirmed without opinion, 90 Ohio St., 384, 108 N. E., 1117). Therefore, in testing the sufficiency of the amended petition, we believe that we may properly regard the allegations of the second cause of action as including allegations that defendant knew that the preparation bought by plaintiff would cause harm.
*252 Thus, we have allegations that defendant made warranties (which would necessarily involve affirmations, representations or statements) to plaintiff that its product would not cause harm when defendant knew that product would cause harm (thereby necessarily knowing that its representations were false); that those warranties were made for the purpose of and did induce plaintiff to buy that product; and that, as a result of that reliance, plaintiff was injured. Hence, it is clear that the so-called second cause of action for breach of warranty does state a good cause of action for deceit and the demurrer thereto should have been overruled. See Gartner v. Corwine, supra (57 Ohio St., 246).
I am very much disturbed by the suggestion in the majority opinion and in the syllabus that there may, in the absence of privity of contract or of some statutory basis, be some action for breach of an express warranty, irrespective of any dishonesty, bad faith, negligence or other fault in making the affirmation of fact constituting such warranty.
The facts in the instant case, especially in its present stage where defendant’s demurrer requires us to consider as admitted all the well pleaded facts of the so-called second cause of action of plaintiff’s petition, tend to obscure how far the reasons advanced by the majority opinion for the judgment have gone beyond and are inconsistent with previously well recognized principles of the law.
In her so-called first cause of action which is admittedly still before the Common Pleas Court for decision, plaintiff in effect alleges that her injuries were proximately caused by the negligence of defendant in manufacturing and selling a product that it “knew, or ought to have known in the exercise of ordinary care * * * would cause harm.” Admittedly this states a good cause of action against the defendant for negligence. MacPherson v. Buick Motor Co., 217 N. Y., 382, 111 N. E., 1050, L. R. A. 1916F, 696, Ann. Cas. 1916C, 440; Witherspoon v. Haft, 157 Ohio St., 474, 484, 106 N. E. (2d), 296; Thrash, a Minor, v. U-Drive-It Co., 158 Ohio St., 465, 110 N. E. (2d), 419. As an alternative basis for recovery of the damages sought, plaintiff in her so-called second cause of action in effect adds to her so-called first cause of action an allegation that defendant war *253 ranted, i. e., affirmed, that its product would not cause harm. If defendant did so, when, as alleged, it knew that its product would cause harm, then it is apparent that the so-called second cause of action states a good cause of action against the defendant for deceit. If defendant did so, when defendant did not know but, as also alleged, defendant should in the exercise of ordinary care have known that its product would cause harm, then there would be a question whether liability should be imposed on the defendant for affirmations not fraudulently but only negligently made. See Smith, Liability for Negligent Language, 14 Harvard Law Review, 184. However, the pronouncements of law made in the majority opinion in support of the judgment would support a conclusion that the petition, without disclosing any contractual relationship between plaintiff and defendant, would have been good as . against demurrer if it merely alleged that defendant manufactured and sold a product that would cause harm and warranted by its affirmation that it would not cause harm, even though there were no allegations in the petition that defendant knew that its product would cause harm {scienter), or that defendant in the exercise of ordinary care should have so known (negligence in not knowing), or that defendant stated in effect that it so knew when it did not know (Pumphrey v. Quillen, 165 Ohio St., 343, 135 N. E. [2d], 328, substitute for scienter). It is apparent therefore that the majority opinion, instead of basing its conclusion upon well established principles of law with respect to actions for deceit as it could have done in the case before it, has unnecessarily based that conclusion upon pronouncements of law which it expressly recognizes as being “opposed to the present weight of authority,” as discarding “legal concepts of the past” and as possibly conflicting “with previous decisions of this court.”
It is quite persuasive, in view of the allegations admitted by the demurrer as to the fraud of the defendant manufacturer in making the affirmations as to the safety of its product, to ask, as the majority opinion does, “what sensible or sound reason exists as to why” a remote purchaser “should not’ be permitted to move against the manufacturer to recoup his loss,” and to state that “no good or valid reason exists for denying him that right.” Perhaps, the same question and statement might be *254 appropriate in a case where there was no claim of such fraud, hut we are not called upon to decide whether it would because such a case is not now before this court for decision.
The majority opinion apparently recognizes that it is elementary that a plaintiff cannot recover from a defendant for breach of a contractual undertaking in the absence of some privity of contract between the plaintiff and the defendant. See Welsh v. Ledyard, ante, 57. In order to avoid the necessity of such privity of contract, it then states that an action for breach of warranty was originally an action in tort for deceit. Having thus summarily disposed of the necessity of privity of contract, the majority opinion then proceeds to ignore those requirements previously recognized in many decisions by this court as the essential requirements for an action in deceit. There is no suggestion as to the necessity of proving scienter or its Pumphrey v. Quillan (165 Ohio St., 343) equivalent, or even of proving negligence in making the affirmations of fact constituting the so-called warranty. See Smith, Liability for Negligent Language, 14 Harvard Law Review, 184; Bohlen, Misrepresentation as Deceit, Negligence or Warranty, 42 Harvard Law Review, 733. In effect, it is suggested that the tort action for deceit is being extended far beyond its previous limitations; and that every affirmation of an existing fact by a manufacturer of property relied upon by a plaintiff may be actionable if the fact is not as represented and even in the absence of any dishonesty, bad faith, negligence or other fault in making the representation. This would appear to be a step backward instead of forward in the development of the law. See Wigmore, Responsibility for Tortious Acts: Its History III, 7 Harvard Law Review, 441.
As stated by Hart, J., in Taylor v. City of Cincinnati, 143 Ohio St., 426, 431, 55 N. E. (2d), 724, 155 A. L. R., 44:
“The original concept of justice, as established in the early English law, required anyone who caused harm to another to make good the loss regardless of any fault or intent to injure on the part of the actor. * * *
“But as civilization advanced, the law advanced with it by adopting the modern view that it is unjust to require a person to pay losses resulting from harm caused innocently or acci *255 dentally without fault. And in the modern law of torts it is now firmly established that fault on the part of the actor is the basis of liability * * * except in a limited class of cases * * *.”
Ohio has even, in the absence of statute, indicated that it may require fault as the basis of liability in some of that “limited class of cases.” See for example Langabaugh v. Anderson, 68 Ohio St., 131, 67 N. E., 286, 62 L. R. A., 948, questioning the case of Fletcher v. Rylands, 3 H. L. R., 330, and O’Day v. Shouvlin, 104 Ohio St., 519, 136 N. E., 289, 25 A. L. E., 980.
In the majority opinion, reference is also made to food cases from other states as recognizing liability for breach of warranty, even in the absence of privity of contract. In this state, because of our pure food statutes, a manufacturer or other seller of unwholesome food would undoubtedly be held liable to a user thereof for injuries proximately resulting therefrom irrespective of any privity of contract and even in the absence of any actual negligence by such manufacturer or seller. However, such liability would be based upon a violation of the statute prohibiting sale of such food. Such violation would be considered as amounting to negligence per se. See Portage Markets Co. v. George, 111 Ohio St., 775, 146 N. E., 283; Laugher v. Ling, 127 Ohio St., 142, 187 N. E., 19; Yochem v. Gloria, Inc., 134 Ohio St., 427, 17 N. E. (2d), 731. It is submitted that, if liability as an insurer of the complete accuracy of affirmations of fact, that are made honestly, in good faith and without negligence or other fault, is to be imposed upon a manufacturer who sells an article and has not contracted for such liability to the one seeking to impose such liability, such liability should ordinarily be imposed by the General Assembly, and this court should not undertake to do so by judicial decision.
Of course, a manuafacturer may be held liable for his negligence causing injury to a remote vendee of his product, irrespective of any privity of contract. However, in my opinion, no reasonably logical argument has been advanced in favor of holding a manufacturer liable to a remote vendee of his product where there is no such negligence for breach of an express warranty, in the absence of any contractual provision therefor or of some statute or of any fault in making the affirmations constituting the warranty.
*256 It might be reasonably argued that there would be the necessary privity of contract in a case where it is alleged and proved that the manufacturer made the express warranty and agreed to be bound thereby to any remote purchaser of his product in consideration of the purchase of that product by such a purchaser. There are no such allegations in the petition in the instant case, and hence I express no opinion as to whether such a warranty of a manufacturer might be regarded as a proposal for a unilateral contract between the manufacturer and a prospective remote purchaser, that could be accepted by the latter’s purchase of the manufacturer’s product so as to ripen into a unilateral contract between them.
Stewart and Herbert, JJ., concur in the foregoing concurring opinion.