OPINION
On May 12, 1988, appellee, Charles T. Allen, filed a complaint in the Lake County Court of Common Pleas against appellants, Znidarsic Brothers, Inc. ("Znidarsic Brothers"), Thomas Znidarsic, C.R.M. Construction Services, Inc.("CRM"), Leiken Oldsmobile, Inc. ("Leiken") and M.R.M. Properties, Inc. ("MRM"). The lawsuit arose out of a construction project on the Leiken Oldsmobile building, in Willoughby, Ohio. MRM owns the property at 38750 Mentor Avenue where the Leiken Oldsmobile Dealership is located. Leiken is the corporation that runs the automobile dealership and contracted with CRM to be the general contractor to remodel the dealership. Thomas Znidarsic was the construction manager for the project and an owner of Znidarsic Brothers.
In his complaint, appellee alleged that he and his company, Allen Builders, entered into an oral contract to supply and install metal studs, drywall and other construction services for Znidarsic Brothers at the Leiken project. In two of the counts of his complaint, appellee alleged that Thomas Znidarsic and Znidarsic Brothers breached their oral contract by failing to pay him for all of the work performed. In his other two counts, appellee alleged that Thomas Znidarsic, Znidarsic Brothers, MRM, Leiken, and CRM were unjustly enriched because they retained his construction services without compensating him. All of the parties sued by appellee filed answers and were represented by the same attorney. Appellants, Thomas Znidarsic and Znidarsic Brothers, filed a counterclaim alleging that appellee breached his oral contract by failing to perform in a timely manner, which caused them to incur damages by hiring others to perform the work.
A jury trial was held on February 8, 1999. At the trial, the testimony revealed that Thomas Znidarsic contacted appellee to do work on the Leiken project because they had worked together in the past. On November 25, 1996, appellee submitted a proposal to Thomas Znidarsic, based on the plans for the Leiken project, to do work on drywall, metal studs, doors, doorframes, and masonry openings for roughly $113,860, depending on certain, unspecified alternatives. On May 22, 1997, after seeing modifications to the plans, appellee submitted a proposal for an additional $1,625. The total of the original proposals was $115,485.
Appellee began work in May 1998. Appellee testified that as the project went along, changes were made to the plans that caused him to incur expenses that exceeded his initial proposals. After discussing the increase in cost with Thomas Znidarsic, the arrangement between them was for appellee to do the work and submit an invoice, which Znidarsic Brothers would pay. The new arrangement constituted a change in the contractual arrangement between the parties; instead of a contract proposing that appellee complete the proposed work for $115,485, the relationship now required that appellants pay appellee for the work he did, whether or not it exceeded the original amount.
According to the testimony of both appellee and Thomas Znidarsic, the relationship did not go smoothly; however, the parties are in dispute with regard to who was at fault. Appellee testified that the project was very disorganized, he was not informed when changes were made, and he was delayed because he had to wait for other facets of the project to be completed before beginning his work. Thomas Znidarsic testified that appellee was at fault for causing the delays and was often unable to work because he was too busy with other projects. Near the end of the project, Thomas Znidarsic hired another company, The Mentor Ridge Company ("Mentor Ridge"), to complete the work that he had hired appellee to do.
Appellee submitted three separate invoices to Thomas Znidarsic. The first two, one for $2,350 and one for $93,691, were paid in full. The third one, for $41,819, was submitted on December 7, 1997. Thomas Znidarsic paid only $25,000 of the third invoice because he believed that some of the work for which appellee was charging him was work done by Mentor Ridge.
At the conclusion of the trial, the trial court sustained appellee's oral motion for a directed verdict on appellants' counterclaim. It submitted appellee's claim to the jury and instructed it that it could render a verdict against Thomas Znidarsic, Znidarsic Brothers, and CRM for breach of contract, against CRM, MRM, and Leiken for unjust enrichment, or against none of the defendants. It also instructed the jury that if it found in favor of appellee, it was then to determine the amount of damages. Initially, the jury returned a verdict of $9,000 jointly against CRM, Thomas Znidarsic, and Znidarsic Brothers for breach of contract and against CRM, MRM, and Leiken for unjust enrichment in the amount of $9,000.
At that point, the trial court had a discussion in chambers with counsel where it was determined that the verdict was improper because the jury could not find both breach of contract and unjust enrichment. The trial court expressed its opinion to the attorneys that the jury must find that either the full amount or nothing was owed because appellants had presented no evidence that they would be entitled to any set-off from the original amount. The court stated that it would instruct the jury that if it found any of the defendants liable, it was required to award the full amount. However, in its further instructions to the jury, to which appellee did not object, the trial court instructed the jury that if it found that any of the parties were liable, they must award damages for "whatever the amount of money * * * that you determine."
At some time during their deliberations, but it is unclear from the record whether it was before or after their first verdict, the jury submitted a question to the court, which read: "Can we award one-half the amount? Or is it all or nothing? [sic]" The trial court answered as follows:
 "The amount you award must be based on the evidence. You must state the amount you find from a preponderance of the evidence on the verdict form which related to the parties against whom you make your determination."
The jury returned a verdict for $9,000 in favor of appellee against Thomas Znidarsic, Znidarsic Brothers, and CRM. On February 25, 1999, appellee filed a motion for judgment notwithstanding the verdict and asked that the amount of the verdict be increased to $18,985.61. The $18,985.61 represented the $16,819 appellee claimed was due on the invoice plus interest on that amount as of that date. On May 6, 1999, the trial court sustained appellee's motion and wrote:
 "This court finds no evidence which substantiates the jury's award of $9,000.00; approximately one-half the amount of damages evidenced by plaintiff at trial. The evidence presented demonstrated that if the jury found for plaintiff, the only amount due and owing to the plaintiff is $18,985.61. Reasonable minds could not have reached different conclusions regarding the evidence at trial."
Appellants raise the following assignments of error:
 "[1.] The trial court erred to the prejudice of the appellants by granting the appellee's oral motion for a directed verdict on the counterclaim of appellant company and appellant Znidarsic.
 "[2.] The trial court erred to the prejudice of the appellants by granting the appellee's motion for judgment notwithstanding the verdict."
Appellants' assignments of error address the trial court's decisions to grant appellee's motions for a directed verdict and judgment notwithstanding the verdict. Under Ohio law, the standards for granting either of these motions is identical. In deciding whether to grant a motion for a directed verdict or a judgment notwithstanding the verdict, a trial court must construe all of the evidence most strongly in favor of the party against whom the motion was made, and, where there is substantial evidence to support its side of the case, upon which reasonable minds may reach a different conclusion, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions. Posin v. A.B.C. Motor Court Hotel (1976), 45 Ohio St.2d 271,275, 344 N.E.2d 334. A motion for a directed verdict tests questions of law, not fact. Wagner v. Roche Laboratories (1996), 77 Ohio St.3d 116,119, 671 N.E.2d 252.
In their first assignment of error, appellants assert that the trial court erred by granting a directed verdict when conflicting evidence existed about whether appellee breached its oral contract with appellants.
Generally, a breach of contract action is pleaded by stating (1) the terms of the contract, (2) the performance by the plaintiff of his obligations, (3) the breach by the defendant, (4) damages, and (5) consideration. Harper v. Miller (1957), 109 Ohio App. 269, 164 N.E.2d 754;American Sales, Inc. v. Boffo (1991), 71 Ohio App.3d 168, 175,593 N.E.2d 316. Damages are an essential element to a breach of contract claim. Id. The arrangement between the parties involved appellee doing the necessary work, submitting invoices for the work to appellants, and appellants paying appellee, if satisfied that the invoices were correct. Appellants failed to prove that they suffered any damage by hiring Mentor Ridge to complete the project. Whether appellee or Mentor Ridge completed the project, appellants would still have been required to pay an invoice for the work completed. They presented no evidence to show that they paid more to Mentor Ridge than they would have to appellee. Appellants' first assignment of error is without merit.
In their second assignment of error, appellants assert that the trial court erred by granting a judgment notwithstanding the verdict because there was evidence presented by which the jury could have awarded a $9,000 verdict, approximately half of appellee's total damages claimed.
It is unclear from the evidence why the trial court believed that the jury could only award either the total damages or no damages. Several times during its discourse with counsel, after the jury rendered its first verdict and before it was sent for further deliberation, the court stated that there was no evidence that appellants were entitled to a set-off and that the evidence showed that it was either all or nothing. At one point, it stated: "either there is a contract and plaintiff complied with the contract or the plaintiff didn't comply and [appellants] owe[s] nothing." However, the record indicates that the contract was for appellee to perform work and submit an invoice for the amount owed. Under this arrangement, appellants were to pay appellee for the work he performed and would not be required to pay for work he did not perform.
The jury had before it: the testimony of appellee about the work he did; copies of the invoices appellee submitted; the testimony of Thomas Znidarsic about the work that appellee did and the work that Mentor Ridge did; and, invoices from Mentor Ridge. None of the invoices submitted as evidence were precise or detailed enough to explain the exact nature of the disputed work. Thomas Allen testified that he did all of the work that he included on the invoice. Thomas Znidarsic testified that Allen billed him for work that was done by Mentor Ridge and that he explained to Allen why he did not pay him in full. As the party that brought the suit, appellee had the duty to convince the jury that he had performed the work for which he was entitled to payment. Construing the evidence most strongly against appellee, as is required in determining whether a motion for judgment notwithstanding the verdict should be granted, it is possible to determine that there are charges included on the invoice for work that he did not complete. Although it is not possible to determine from the evidence where the jury got its figure of $9,000, it was not necessary that the jury either award the full amount or nothing. Moreover, the trial court instructed the jury, without objection from appellee, that it could award the damages that it determined from the evidence, not that it must award all or nothing.
It was improper for the trial court to add to the jury's verdict. "The authorities are unanimous in holding that, in an action for unliquidated damages, a court is powerless to reduce a verdict rendered by a jury and render a judgment for a lesser amount without the consent of the party in whose favor the verdict was rendered. This is for the very plain and sufficient reason that a reduction under such circumstances invades the province of the jury." Chester Park Co. v. Schulte (1929),120 Ohio St. 273, 287, 166 N.E. 186. The Supreme Court of Ohio likened additur practice with remittitur practice and discussed the same concerns with regard to invading the jury's province in Markota v. East Ohio GasCo. (1951), 154 Ohio St. 546, 556, 97 N.E.2d 13. In Markota, the Supreme Court of Ohio discussed the evolution of the common law rules of additur and remittitur as they relate to the Ohio Constitution and determined that these practices did not deprive a party of the right to have a jury determine damages if the party waives that right. Id. The trial court is without authority to either reduce or increase the jury's verdict, without ordering a new trial, unless the affected party consents to the modification. Midwest Elastomers, Inc. v. Piqua Steel Co. (Aug. 16, 1983), Auglaize App. No. 2-82-15, unreported.
Furthermore, we have previously held that a party waives his ability to challenge a purportedly inconsistent verdict in a motion for judgment notwithstanding the verdict when he did not object earlier while the jury was still available to correct any inconsistency. Cooper v. Metal SalesMfg. Corp. (1995), 104 Ohio App.3d 34, 41-42, 660 N.E.2d 1245. Appellee had an opportunity before the jury was discharged to object and have the court address any inconsistencies, at that time, but failed to do so. Therefore, it was improper for the trial court to sustain appellee's motion for judgment notwithstanding the verdict. Appellants' second assignment of error has merit.
We reverse the judgment of the trial court and remand this cause for the jury verdict to be reinstated.
 ________________________________ NADER, J.
CHRISTLEY, P.J., DONOFRIO, J., Ret. Seventh Appellate District, sitting by assignment. concur.