Marshall, C. J.
 

 This is a -wrongful death action. Ralph Schulte, a boy of 16 years, met his death while swimming in an artificial lake in Chester Park in the city of Cincinnati. Suit was brought against the park company, claiming that his death was caused by electrocution when he came in contact with an iron pole maintained in said lake for the purpose of carrying electric wires to light the swimming pool in the night season. The swimming pool is one of the attractions of the park, which is maintained as an amusement resort for profit, and an admission fee is charged persons using the pool. The action was brought under the provisions of Lord Campbell’s Act, as set forth in Section 10772, General Code, for the benefit of the next of kin.
 

 The evidence is in conflict as to the cause of his
 
 death;
 
 it being argued in the court of common pleas and in the Court of Appeals that there was no evidence tending to prove negligence on the part of the
 
 *275
 
 park company. A motion to direct a- verdict in defendant’s favor at the close of plaintiff’s testimony was overruled by the court, and the motion was renewed at the close of all the testimony and was again overruled. That question is again earnestly argued in this court.
 

 The voluminous record discloses a mass of conflicting testimony as to the cause of his death. Two weeks prior to his death, while playing ball, he was struck on the head by a pitched ball, and the testimony is in serious conflict as to the extent of the injury from that cause, but the jury might well have believed that it was only a temporary concussion, the effects of which had completely disappeared before the date of his death.
 

 The testimony concerning the alleged electrocution is likewise in serious conflict. There was testimony on behalf of plaintiff that he was a good swimmer, and that there was no indication of physical distress prior to his seizing the pole, and that instantly upon coming in contact with the pole his head was thrown back and his body became rigid, and it required much force to loosen his grasp upon the pole. Other persons, who went to his rescue, felt a tingling sensation which they thought was caused by electric current in the water. There was evidence tending to show electrical burns upon portions of his body. On the other hand, the park company adduced evidence to show that the wires attached to the pole were all properly insulated, that the attachments were likewise properly insulated, and that there was no current in the wires during the daytime; £tnd, generally, the park company sought to prove that it was impossible for the pole to become charged with
 
 *276
 
 electrical current. There was further evidence tending to show that the wires connecting the pole with other attachments on the shore of the lake were sometimes swayed by the wind and became crossed, and that the insulation was not perfect. There was much expert testimony of physicians, each adducing separate theories of the causes of death. While the evidence was seriously in conflict, there was evidence of a substantial nature upon which a jury could properly render a verdict in plaintiff’s favor. The trial court was of the opinion that there was some evidence to submit to the jury. The jury rendered its verdict in plaintiff’s favor. The trial court refused to grant a new trial on the weight of the evidence. The Court of Appeals, on the review
 
 of the
 
 weight of the evidence, did not grant a new trial. This court is required to examine the record in view of the claim that there is no evidence tending to support the allegations of the petition and therefore no evidence to support the verdict itself, and upon such examination this court is of the opinion that there is conflicting evidence which was properly submitted to the jury, and, inasmuch as this court will not weigh the evidence, that feature of the case presents no ground for reversal.
 

 There is another and more important question presented by this record. In the petition in error filed in this court, among many assignments of error, two grounds are stressed: First, “the damages assessed in said verdict are excessive, appearing to have been given under the influence of passion and prejudice”; second, “the said verdict and judgment is not sustained by sufficient evidence.” The same assignments of error are found in the petition in
 
 *277
 
 error filed in the Court of Appeals, and also in the motion for new trial after rendition of verdict and before entry of judgment. The verdict rendered by the jury was for $20,000. In overruling the motion for new trial, the court made the following statement in an opinion:
 

 “The court is of the opinion that the verdict is sustained by sufficient evidence; is not contrary to the weight of the evidence nor contrary to law. * * * For the death the jury awarded the plaintiff the sum of $20,000. This amount, in the opinion of the court, was excessive, but the court is not able to say from the record that there is anything to indicate that the verdict was rendered under the influence of passion or prejudice. The measure of damages under our statute in this class of eases is not well defined and the court has only arrived at the conclusion that this verdict is excessive by comparison with other verdicts which have been held to be excessive by courts of superior jurisdiction in this state and in the same class of cases.”
 

 In the entry overruling the motion for new trial, we find the following:
 

 “It appearing to the court that the plaintiff and his counsel have agreed to a
 
 remittitur
 
 of five thousand dollars ($5,000.00) in accordance with the opinion of the court on defendant’s motion for a new trial, the court finds that said motion is not well taken.”
 

 The Court of Appeals, in affirming the judgment, stated in its opinion:
 

 “The main points of error stressed are that the verdict was excessive, appearing to have been given under the influence of passion or prejudice, and that
 
 *278
 
 the verdict was manifestly against the weight of the evidence. * * * We are of the opinion that the amount of the judgment is not supported by the evidence; neither do we agree with counsel that it appears to have been rendered under the influence of passion or.prejudice.”
 

 In the journal entry in that court it is stated:
 

 “The evidence will not support a judgment of $15,000, but would support a judgment of $10,000, and the court therefore holds said judgment to be excessive in the sum of $5,000 and that it should be modified by reducing it to the sum of $10,000 and costs. Defendant in error having consented to a
 
 remittitur
 
 of $'5,000, it is ordered that said judgment, as modified, should be affirmed.”
 

 The subject of excessive verdicts and of
 
 remittitur
 
 of the excess with the consent of the judgment creditor is one which has been before the courts of Ohio during the entire history of the jurisprudence of the state. The subject was discussed and definite principles laid down before any statute had been enacted to govern the same. In
 
 Simpson
 
 v.
 
 Pitman,
 
 13 Ohio, 365, it was held that, in an action for slander, a new trial will not be granted on the ground of excessive damages unless the amount be so large as to evince prejudice, partiality, or corruption in the jury. That principle was so declared upon the authority of many cases cited in the opinion. The judgment was set aside in that case because the court believed that passion and prejudice in fact entered into the deliberations of the jury. This principle was carried into the statute at the time of the enactment of the Civil Code in 1853, and is now paragraph 4 of Section 11576, General Code, which provides as one of
 
 *279
 
 the grounds for new trial: “Excessive damages, appearing to have been given under the influence of passion or prejudice.” Since that time a very large number of cases have been decided- by this court, in many of which verdicts have been reduced by order of
 
 remittitur,
 
 with the consent of the judgment creditor, where the reduction could be made by a process of mathematical calculation. We shall take no notice of those cases, because there seems to be no difference of opinion concerning the power of the court to order a
 
 remittitur
 
 under such circumstances. Aside from those cases, there are many others where the damages were necessarily the result of the opinion of the jury rather than the result of mathematical calculation. It will be found profitable to review the authorities in that line of cases.
 

 One of the earliset cases is
 
 Pendleton Street Rd. Co.
 
 v.
 
 Rahmann,
 
 22 Ohio St., 446. The syllabus of that case states:
 

 “Where the damages assessed by a jury are excessive, but not in a degree to necessarily imply the influence of passion or prejudice in their finding, the court, in the exercise of a sound discretion, may make the
 
 remittitur
 
 of the excess the condition of refusing to grant a new trial.”
 

 In the opinion there was an elaborate discussion of the difference between those cases where the verdict was found to be excessive by a process of mathematical calculation and those cases where the verdict was based entirely upon the opinion of the jurors. That case was one of personal injuries, and the court nevertheless affirmed a judgment where there had been a
 
 remittitur
 
 of 50 per cent. It was stated, at page 450, that:
 

 
 *280
 
 “The amount of the verdict is not such that the influence of passion or prejudice is inferable from its magnitude. It is not deducible from the facts spread upon the record. It is not shown by the finding of the court. We are not put in possession of any circumstances imposing the statutory obligation to vacate.”
 

 Later, on the same page of the opinion, we find the following:
 

 “So far as appears, then, the entering of judgment upon the verdict for its entire amount, would not have been disturbed by this court. But, with the consent of the plaintiff, judgment was entered for a smaller sum. If this had been done arbitrarily, without his assent, it might have been ground of exception and reversal at his instance. But can the defendant object? The only consequence to him is the substitution of a less for a larger sum, which might have been legally exacted, and cannot be held to prejudically affect him.”
 

 That case has been approved and followed in a number of later decisions of this court and each subsequent approval more firmly commits this court to the judicial policy of giving trial courts and Courts of Appeals the power to order a
 
 remittitur
 
 with the assent of the judgment creditor, or, in the alternative, to grant a new trial. We are, of course, referring only to those cases where the verdict is an expression of the opinion of the jurors and where the results could not be reached by mathematical computation.
 

 It must be admitted that the expressions of this court on this subject have not always been clear, or its conclusions always consistent, but the early
 
 *281
 
 leading case of
 
 Pendleton St. Rd. Co.
 
 v.
 
 Rahmann, supra,
 
 has never been overruled, or even criticized. Before that case was decided, and almost immediately after the enactment of Section 11576 (51 Ohio Laws, 105, Section 297), this court, in the year 1858, overruled a motion for leave to file a petition in error to review a judgment of the superior court of Cincinnati in a case where the jury rendered a verdict of $1,500, and the trial court ordered a
 
 remittitur
 
 in the sum of $450, which was consented to by the plaintiff.
 
 Durrell
 
 v.
 
 Boyd, Assignee,
 
 9 Ohio St., 72. The motion was overruled without opinion, but it could only have been overruled on the theory that the court was entirely within its authority in ordering the
 
 remittitur
 
 with the consent of the plaintiff. That was a case where the damages were not the subject-matter of mathematical calculation.
 

 In
 
 Sibila
 
 v.
 
 Bahney,
 
 34 Ohio St., 399, a judgment had been entered in favor of a wife for loss of support by her husband by reason of the defendant’s having furnished intoxicating liquors to her husband, which liability was provided by statute. The verdict was in the sum of $5,000, and the trial court refused to grant a new trial, and the Circuit Court affirmed the judgment. This court overruled all of the assignments of error except that relating to the excessive award of damages, and on that point stated, at page 410, that it was satisfied that the damages were excessive:
 

 “But we are satisfied that the damages are excessive, and therefore that the verdict is against the evidence. The period of time covered by the illegal acts of the defendant below was about two years and six months. The verdict was $5,000.
 
 *282
 
 * * * In view of the facts developed at the trial, fairly dedncible from the evidence disclosed by the bill of exceptions, we think the verdict was too large by twenty-five hundred dollars. A verdict may and ought to be set aside, as against the evidence (2 S. &. C. 1155, § 4), where the damages are excessive, unless the excess is remitted. If a
 
 remittitur
 
 in the above sum is entered by the plaintiff below the judgment will be affirmed; otherwise reversed, and a new incx^tl. ord.GrG¿ ^ ^
 

 In
 
 Spear & Co.
 
 v.
 
 Fulton,
 
 92 Ohio St., 523, 112 N. E., 1086, this court affirmed a judgment of the Circuit Court without opinion. In the trial court the action was one for damages which were not the subject-matter of computation and the verdict was in the sum of $3,500. With the consent of plaintiff it was reduced to $2,000, and judgment entered. On error being prosecuted to the Circuit Court, it was argued in that court by the plaintiff in error that the trial court had stated in rendering its opinion that the verdict had been reached by the jury under the influence of passion and prejudice. That finding was not carried into the journal entry. The Circuit Court therefore held that, the trial court having declined on defendant’s request to set forth that finding in the journal entry, the Circuit Court could not supply it and bring it into the record, and that therefore the judgment must be affirmed. In affirming the judgment of the Circuit Court without opinion this court in that case affirmed the doctrine that the situation is controlled by the court finding or not finding as a fact that the jury was influenced by passion and prejudice.
 

 In
 
 Ohio Traction Co.
 
 v.
 
 Shearer,
 
 97 Ohio St., 332,
 
 *283
 
 120 N. E., 878, and in
 
 Capital City Dairy Co. v. Amicon,
 
 99 Ohio St., 443, 126 N. E., 925, the court of common pleas had in each instance reduced the verdict with the consent of the plaintiff, and in each instance did so on the ground that the verdict was excessive, but did not in either instance make a finding that the jury was not influenced by passion and prejudice. In each case the Court of Appeals merely affirmed the judgment. In each case this court affirmed the Court of Appeals upon the authority of
 
 Pendleton St. Rd. Co.
 
 v.
 
 Rahmann, supra.
 

 In
 
 T., C. & O. R. Rd. Co.
 
 v.
 
 Miller,
 
 103 Ohio St., 17, 132 N. E., 156, the jury rendered a verdict for personal injury damages in the sum of $75,000. The trial court, in ruling on the motion for new trial, held that the verdict, “though excessive, does not appear to have been given under the influence of passion or prejudice and the plaintiff having remitted from the amount of the verdict all in excess of $45,000.00, said motion is overruled.” The Court of Appeals affirmed the judgment. In this court the question of the right to enter a
 
 remittitur
 
 with the assent of the plaintiff was earnestly argued in connection with alleged errors in the charge, and it was particularly stated in the
 
 per curiam
 
 opinion:
 

 “If the sympathy of the jury is exhibited in the verdict to such extent as to show passion or prejudice, and excessive damages result therefrom, the law of Ohio makes it the imperative duty of the court to set aside the verdict.”
 

 It will thus be seen that, although the Court of Appeals refused to reverse the judgment, this court did so on the ground of excessive damages, appearing to have been given under the influence of passion
 
 *284
 
 and prejudice. In this respect the court followed the course taken by this court in
 
 Sibila
 
 v.
 
 Bahney, supra,
 
 although that case was not referred to' in the opinion. In both cases this court could only have reached the conclusions it did by giving consideration to and exercising an independent judgment upon the evidence.
 

 In
 
 Toledo Railways & Light Co.
 
 v.
 
 Paulin,
 
 93 Ohio St., 396, 113 N. E., 269, it was decided that:
 

 “A reviewing court, upon finding that the verdict of a jury assessing damages for personal injury is such in amount that it is not supported by the weight of the evidence, and therefore excessive, may remand the cause for a new trial, but is not authorized upon such ground to modify the judgment.”
 

 The opinion in that case does not cite a single authority. It is clearly out of harmony with all of the other adjudications following the case of
 
 Pendleton St. Rd. Co.
 
 v.
 
 Rahmann, supra.
 

 In
 
 Silverglade
 
 v.
 
 Von Rohr,
 
 107 Ohio St., 75, 80, 140 N. E., 669, this court again planted itself squarely and firmly upon the authority of
 
 Pendleton St. Rd. Co.
 
 v.
 
 Rahmann, supra.
 
 The opinion in that case reviews at some length the authorities, and reaches the conclusion that the doctrine of the
 
 Rahmann case
 
 is supported by the weight of authority not only in this state but in the other states of the Union.
 

 In
 
 Alter
 
 v.
 
 Shearwood,
 
 114 Ohio St., 560, 151 N. E., 667, this court again definitely reaffirms the doctrine of the
 
 Rahmann case
 
 by the concurrence of six jildges, and further declares that a consent
 
 remittitur
 
 does not violate any constitutional provisions. It is particularly stated that the Court of Appeals
 
 *285
 
 has the power to modify a judgment by reducing its amount with the consent of the plaintiff, and points out that the right to modify is specifically authorized by Section 6, Article IV, of our Constitution.
 

 In a very large number of reported cases decided by the Circuit Courts and Courts of Appeals of this state
 
 remittiturs
 
 have been ordered with the consent of plaintiff, following the decisions of this court, and in at least four reported cases verdicts and judgments have been reduced in personal injury cases. In many of them the reductions have amounted to a very large proportion of the original verdict.
 
 Wabash Ry. Co.
 
 v.
 
 Fox,
 
 20 C. C., 440, 11 C. D., 148;
 
 American Contracting Co.
 
 v.
 
 Sammon,
 
 6 C. C. (N. S.), 121, 17 C. D., 337;
 
 Spear & Co.
 
 v.
 
 Fulton,
 
 3 Ohio App., 40;
 
 Cleveland Ry. Co.
 
 v.
 
 Burianek,
 
 11 Ohio App., 168.
 

 During the sixteen years this court has been exercising jurisdiction in motions to certify, it is fair to assume that hundreds of cases involving a
 
 remittitur
 
 have been argued before this court upon motions to certify, where motions have been denied, and it is also fair to assume that in other hundreds of cases judgments have been reduced in personal injury cases by the trial courts of this state, and by the Courts of Appeals, where error has not been prosecuted therefrom. During the short period that the instant case has been pending in this court, not less than a dozen such cases have been before this court, and motions to certify the record have been overruled. The doctrine of reducing verdicts and judgments on the ground that they are excessive, but where the court finds that the jury was not influenced by passion and prejudice, must be said to have become firmly fixed in Ohio jurisprudence.
 

 
 *286
 
 The principal argument made against reducing a verdict of a jury is that it results in substituting the judgment of the court for that of the jury in matters where it is the settled policy of our jurisprudence that the amount should be left to the determination of a jury. That argument has been so often answered in the negative by the courts of Ohio that it must be said that the subject should now be considered beyond further debate. It is after all only a question of policy. The subject is not circumscribed by any statutory or constitutional provisions, and the courts of each state are at liberty to determine their own separate policies. There is a division among the states of the Union on this subject. A majority of them favor the policy of permitting the reduction of verdicts and judgments. It is entirely within the province of this court to make a complete change of that policy. Some of the members of this court have never favored the present policy. Other members, perhaps, who have favored it in the past, feel disposed toward a reversal. Surely no reversal should be made by a divided court. It is much more to be desired that the fixed policy of the past become the settled policy of the state and be placed beyond the pale of future controversy. It is likewise very much to be desired that some very definite rules be laid down by this court for the guidance of the trial courts and the Courts of Appeals, as well as for the bar of the state, in order that there may be uniformity of action in the trial courts and in the Courts of Appeals.
 

 There would be no value in an elaborate discussion of the decisions of the courts in the various jurisdictions throughout the United States. A refer
 
 *287
 
 ence to the authorities has been made in the opinion in
 
 Silverglade
 
 v.
 
 Von Rohr, supra,
 
 and in addition to that citation we might properly refer to the editorial annotations found in 53 A. L. R., 779, and to the numerous cases therein cited and commented upon. The subject of increase and reduction of verdicts is largely one of policy, in which the soundness or unsoundness of legal principles has but little part. While the courts of the various jurisdictions are not in full harmony upon the questions of policy, there are some legal principles upon which they are in perfect unanimity. The authorities are unanimous in holding that, in an action for unliquidated damages, a court is powerless to reduce a verdict rendered by a jury and render a judgment for a lesser amount without the consent of the party in whose favor the verdict was rendered. This is for the very plain and sufficient reason that a reduction under such circumstances invades the province of the jury. Again, the decisions are quite uniform, though not unanimous, upon the proposition that a new trial may be denied or a judgment affirmed in an error proceeding, on condition of a
 
 remittitur
 
 with the consent of the plaintiff, over the objection of the defendant. With both of these propositions the majority of this court are in full accord. The decisions of the courts of this state on this subject are very nearly in full harmony, and, except for a very few decisions, our task in the instant case would be a comparatively simple one.
 

 The
 
 Paulin case, supra,
 
 is contrary to the plain mandate of Section 6, Article IV, of the Ohio Constitution. That section defines the jurisdiction of the Court of Appeals. The first sentence of that defini
 
 *288
 
 tion is as follows: “The court of appeals shall have original jurisdiction in quo warranto, mandamus, habeas corpus, prohibition and procedendo, and appellate jurisdiction in the trial of chancery-cases, and, to
 
 review, affirm, modify or reverse
 
 the judgments of the courts of common pleas, superior courts and other courts of record,” etc. In the
 
 Paulin case
 
 the Court of Appeals had unanimously found “that no part of the damages allowed by the jury as shown by their verdict, was the result of passion or prejudice on the part of the jury.” The Court of Appeals was not in unanimous accord on the question of the verdict being excessive, and was therefore in doubt about the right to reverse the trial court, because the question of excessive damages involved a consideration of the weight of the evidence. This doubt was raised by another provision of Section 6, Article IV, relating to the jurisdiction of that court: “No judgment of a court of common pleas, a superior court or other court of record shall be
 
 reversed
 
 except by the concurrence of all the judges of the Court of Appeals on the weight of the evidence,” etc. Inasmuch as a reduction of a verdict in an action for unliquidated damages necessarily involves a ¡consideration of the weight of the evidence, two judges of the Court of Appeals clearly lacked authority to reverse. But did they lack j authority to modify the judgment? The general provision of Section 6, Article IV, first above quoted, confers general power upon the Court of Appeals to i review, affirm, modify, or reverse judgments. The special provision last above quoted only relates to the right to reverse, and has special application to the weight of evidence. The special
 
 *289
 
 provision must be regarded as an exception to the general provision. The special provision makes no limitation upon the right to affirm or modify. In the opinion of a majority of this court, as at present constituted, the Court of Appeals might have reduced the verdict with the assent of the plaintiff. Upon a review of the judgment of the Court of Appeals this court should have remanded the cause to the Court of Appeals with instructions to exercise its independent judgment upon the weight of evidence, and either to reverse, or to modify with the assent of the plaintiff, as its judgment might dictate. A modification, where the subject is susceptible of mathematical calculation, does not involve the element of opinion. The weight of evidence is not involved. It is primarily and solely a legal question, and a modification can be made by the trial court or any reviewing court with the consent of the prevailing party. Where the subject involves the opinions of the jurors, and calls for the exercise of their judgment, and brings into action their experience and knowledge, the modification can only be made with the consent of the prevailing .party; and, if consent is not given, the verdict must be set aside.
 

 The subject of reduction of verdicts and judgments in actions for unliquidated damages is coming before courts of review with ever-increasing frequency. It is therefore time, and high time, that this court should lay down some principles and declare some policies for its own future guidance, and for the guidance of trial courts and intermediate courts, in order that the bar and bench may have definite rules for their guidance, and in order that the increasing volume of error proceedings grow
 
 *290
 
 ing ont of these questions may be forestalled. We have therefore formulated the following rules:
 

 (1) In an action for unliquidated damages, neither the trial court nor any reviewing court has the power to reduce the verdict of a jury or to render judgment for a lesser amount without the consent to such reduction of the party in whose favor the verdict was rendered.
 

 (2) If a trial court in an action for unliquidated damages finds that the verdict is excessive, and that it was rendered under the influence of passion and prejudice, it has no alternative except to set it aside and grant a new trial.
 

 (3) If a verdict in an action for unliquidated damages is in the opinion of the trial court excessive, but not appearing to be influenced by passion or prejudice, the court may with the assent of plaintiff reduce the verdict by
 
 remittitur
 
 to any amount supported by evidence.
 

 (4) Neither the trial court nor any reviewing court has power or authority to réduce a verdict on any grounds without the assent of the prevailing party, unless the undisputed testimony shows an error in mathematical calculation.
 

 (5) The Court of Appeals has the same unlimited power and control of verdicts and judgments as the trial court, and may weigh the evidence and exercise an independent judgment upon questions of excessive damages, and, when no passion or prejudice is apparent, may modify and affirm the judgment by ordering a
 
 remittitur
 
 with the’ consent of the prevailing party.
 

 (6) If the Court of Appeals in an error proceeding in an action for unliquidated damages finds that
 
 *291
 
 the verdict was rendered under the influence of passion or prejudice, it has no alternative except to reverse and remand for a new trial.
 

 The charge of the court in the instant case on the measure of damages was entirely free from error:
 

 “You may award such damages as you may think proportionate to the pecuniary injury resulting from the death to those for whose benefit the action was brought, that is to say, you may award such damages as the persons for whom this action is brought might reasonably have been expected to have received from the earnings of the deceased had he lived and from his estate at his death.”
 

 This charge was very carefully patterned after the provisions of Section 10772, General Code. In actions for wrongful death, there are no definite standards for determining the amount which the beneficiaries might reasonably expect to receive, and the amount is purely matter of opinion, and in no sense matter of computation. This court in the case of
 
 Cincinnati Street Ry. Co.
 
 v.
 
 Altemeier, Admr.,
 
 60 Ohio St., 10, 53 N. E., 300, has very definitely declared the measure of damages in wrongful death cases. After declaring that nothing can be allowed on account of bereavement, mental suffering, or punitive damages, the syllabus in that case states:
 

 “Any evidence which tends to show the amount of such pecuniary injuries sustained by such beneficiaries, or which tends to show that such beneficiaries received financial aid from the deceased during his lifetime, and that they would likely have continued to receive such aid, had he lived, is competent. And for the purpose of showing that such beneficiaries needed and would likely have received
 
 *292
 
 such aid from the deceased, the circumstances, age, health and means of support of the beneficiary, if a parent or next of kin of the deceased, as well as the age,' health, disposition and thrift of the deceased may be shown.”
 

 All these things enter into the question of pecuniary injury. The opinions of jurors might differ on each and all of these elements, and the trial court and reviewing courts might easily differ from the jury. Such differences of opinion do not necessarily indicate that the jury was influenced by passion or prejudice where the verdict was larger in amount than the trial court or a reviewing court would have rendered on the same evidence. The trial court did reduce the verdict with the consent of plaintiff. On review, the Court of Appeals made a further reduction with the consent of plaintiff.
 

 Each of the lower courts having ordered a
 
 remittitur,
 
 with the consent of the plaintiff, this court will not substitute its judgment for either that of the jury or the lower courts, and, finding no error in this record, the judgment of the Court of Appeals will be affirmed.
 

 Judgment affirmed.
 

 Jones, Day and Allen, JJ., concur.