Bell, J.
This cause comes on for hearing upon a motion for a new trial, numerous errors had been assigned and counsel for both sides in addition to oral arguments have presented exhaustive briefs. The court has carefully examined all of these questions, and only one question seriously challenges consideration, that is, whether the verdict in this case was so excessive as to make the conclusion inescapable that it was rendered under the influence of passion and prejudice.
The facts as disclosed by the evidence are substantially as follows:
The plaintiff, Louis Otto Jungkunz, Jr., was an infant of the age of thirteen years and three months, and brought his action by his mother as his next friend. The evidence discloses that the defendant corporation were engaged in the manufacturing business, and that it had a factory on the north side of Sassafras street, extending from Spring Grove avenue to Colerain avenue, in Cincinnati; that on December 2, 1930, the time of the occurrence which gave rise to this lawsuit, and for some time prior thereto, the defendant corporation had used Sassafras street as a place for storing and dumping the waste materials from its factory, including waste of liquids and oils which it was in the habit of placing on Sassafras street in iron barrels with no covering, so that the contents of the barrels were exposed and easily accessible to all persons using the street. The evidence further discloses that a number of boys were in the habit of taking these liquids and oils out of the barrels upon Sassafras street and using them upon bonfires that were frequently built upon a lot owned by the defendant company. The lot was on Arlington street in plain view of the defendant’s factory.
On December first, the plaintiff took some liquid out of *188 one of the barrels and put it in a bucket and took it to his home. The evidence further discloses that the vacant lot was used for the purpose of ingress and egress to the plaintiff’s home. On the second day of December the plaintiff returned to Sassafras street and claims to have taken from the same barrel another quantity of the liquid contained therein, and to have carried the liquid from the barrel which was on the public thoroughfare to a bonfire in the vacant lot on Arlington street. The plaintiff spilt some of the liquid upon his clothing during the process of carrying it from Sassafras street to the lot in question.
The exact state of the bonfire at the time of the injury to the plaintiff is in dispute. On the one side it was claimed the bonfire had been permitted to die and that only glowing embers remained; and on the other side it is claimed that the bonfire was still burning and blazing, that in some fashion the plaintiff’s clothing took fire and he was severely and painfully burnt from his hips to his ankles, and the burns were first, second and third degree burns of considerable severity. The evidence discloses that he was confined in the hospital for a period of about six months and that for some time thereafter he' was confined to his bed and a wheel chair; that the areas of his legs had not healed but remained open sores, and that other portions were covered with scarred tissue and permanent scars. The evidence clearly discloses that certain of his injuries were permanent in character and that he had suffered great pain and nervous shock. At the time of the trial the evidence discloses that the backward motion of the left leg was impaired and that the motion of the ankle, backward, forward and rotary were all impaired. Both of the boy’s limbs were practically covered by scarred tissue. On the left knee cap there was an accumulation of scar tissue and proud flesh and, at the time of the trial, there was an open sore upon the knee cap; and the evidence further discloses that another operation would be necessary to remedy that condition, without any real assurance that such operation would be a complete success.
There was no evidence that this plaintiff’s earning capacity would be impaired at the time of his arrival at majority.
*189 Upon this state of facts the jury returned a verdict in favor of the plaintiff in the sum of twenty-eight thousand dollars.
During the course of the trial many questions as to contributory negligence and proximate cause were raised by the defendant and’ it was represented and vigorously asserted that the proper action of the court should have been to direct a verdict in favor of the defendant. The court ruled that the question of contributory negligence and proximate cause were questions for the jury and this was not a case where reasonable minds could not disagree as to whether or not this plaintiff had been guilty of contributory negligence as well as whether or not the placing of this substance upon a public thoroughfare, within the easy reach of children playing upon the thoroughfare was not the proximate cause of the plaintiff’s injuries.
After an examination of the authorities the court is still of the opinion that these were questions properly submitted to the jury. There was. also questions raised as to the admissibility of certain evidence and as to the charge of the court to the jury. The court still adheres to its views on the question of admissibility of the evidence, and the court has reread its charge to the jury and is of the opinion there was nothing prejudicial in the charge; leaving the single question as to the size o¡f this verdict, and ■whether it was so large that the conclusion is'irresistible that it was rendered under the influence of passion and prejudice.
The court has made a careful investigation of the authorities in this state and has failed to find a single case where a verdict of the size here rendered has ever been permitted to stand.
In the case of Chester Park v. Schulte, 120 O. S. 273, 166 N. E. 186, a boy of about seventeen was killed and- a verdict was returned for twenty thousand dollars; was cut by the trial court to fifteen thousand dollars, and by the Court of Appeals to ten thousand dollars. The Supreme Court of this state by a four to three decision sustained the judgment. Th'e minority opinion of the court was to the effect that where a verdict was rendered in a sum double the *190 amount which the Court of Appeals decided, the evidence would sustain, the verdict should be set aside and a new trial awarded.
In the case of Scrabic v. C. N. O. & T. P. Ry., a man was horribly injured and rendered a helpless cripple the rest of his life. The testimony in that case disclosed the man was forty years of age and had an income of fifty-five dollars per week; that his income for the rest of his life was destroyed; that he had expended the sum of four thousand dollars for doctor and hospital bills. In that case the verdict was thirty-seven thousand five hundred dollars. The Court of Appeals of this district cut the verdict to twenty-five thousand dollars.
If this verdict were allowed to stand, capitalized at six per cent, it would mean a pension to this boy for the rest of his life of one hundred and forty dollars per month, with his principal still intact upon his death.
With no evidence in the case that his earning capacity would be impaired when he arrived at majority and with no evidence from which such an inference could be reasonably drawn, the court is of the opinion that this verdict is so excessive that there is one duty for the court to perform, that is, to set aside the verdict and order a new trial.
The court is entirely familiar with the proposition that it is within the power of the court to order a remittitur, and the court is further familiar with the decision of the Supreme Court that a remittitur amounting to fifty per cent, does not, in and of itself, furnish conclusive proof that excessive damages were given under 'the influence of passion and prejudice, but this verdict is so entirely out of proportion with the ideas of the court as to the proper amount that should be awarded by the jury, in the event they found the issues in favor of the plaintiff, that it should be set aside and a new trial granted.
An entry may be drawn accordingly.