O’Donnell, J.,
dissenting in part.
{¶ 138} Section 5, Article I of the Ohio Constitution states that “[t]he right of trial by jury shall be inviolate, except that, in civil cases, laws may be passed to authorize the rendering of a verdict by the concurrence of not less than three-fourths of the jury.” (Emphasis added.)
{¶ 139} In Sorrell v. Thevenir (1994), 69 Ohio St.3d 415, 633 N.E.2d 504, we reiterated that “ ‘[t]he right to a jury trial does not involve merely a question of procedure. The right to jury trial derives from Magna Charta. It is reasserted both in the Constitution of the United States and in the Constitution of the State of Ohio. For centuries it has been held that the right of trial by jury is a fundamental constitutional right, a substantial right, and not a procedural privilege.’ ” Id. at 421, 633 N.E.2d 504, quoting Cleveland Ry. Co. v. Holliday (1933), 127 Ohio St. 278, 284, 188 N.E. 1, and citing Kneisley v. Lattimer-Stevens Co. *498 (1988), 40 Ohio St.3d 354, 356, 533 N.E.2d 743. In Sorrell, we further stated that this constitutional right includes the “right to have all facts determined by the jury, including damages.” Id. at 422, 633 N.E.2d 504, citing Miller v. Wikel Mfg. Co. (1989), 46 Ohio St.3d 76, 81, 545 N.E.2d 76 (Douglas, J., concurring in part and dissenting in part).
{¶ 140} The majority acknowledges Sorrell, stating that “[b]ecause the extent of damages suffered by a plaintiff is a factual issue, it is within the jury’s province to determine the amount of damages to be awarded,” but it concludes that the cap on noneconomic damages established by R.C. 2315.18 does not violate this constitutional right because “[cjourts must simply apply the limits as a matter of law to the facts found by the jury; they do not alter the findings of facts themselves, thus avoiding constitutional conflicts.” In support, the majority relies on two other instances where a court may modify a jury’s findings with respect to damages: one, remittitur, and two, statutory treble damages. Further, the majority relies on federal precedent holding that the Seventh Amendment to the United States Constitution does not forbid the application of caps on damages. In my view, all three bases for the majority’s holding are inapposite.
{¶ 141} In Alter v. Shearwood (1926), 114 Ohio St. 560, 151 N.E. 667, this court held that the doctrine of remittitur is constitutional. But a remittitur, in my opinion, differs fundamentally from the cap on noneconomic damages imposed by R.C. 2315.18. In Wightman v. Consol. Rail Corp. (1999), 86 Ohio St.3d 431, 444, 715 N.E.2d 546, we stated that “[a] court has the inherent authority to remit an excessive award, assuming it is not tainted with passion or prejudice, to an amount supported by the weight of the evidence,” explaining that “specific criteria * * * must be met before a court may grant a remittitur: (1) unliquidated damages are assessed by a jury, (2) the verdict is not influenced by passion or prejudice, (3) the award is excessive, and (4) the plaintiff agrees to the reduction in damages.” Id., citing Chester Park v. Schulte (1929), 120 Ohio St. 273, 166 N.E. 186, paragraph three of the syllabus.
(¶ 142} In Schulte, this court emphasized the importance of the last requirement, stating, “In an action for unliquidated damages, neither the trial court nor any reviewing court has the power to reduce the verdict of a jury or to render judgment for a lesser amount without the consent to such reduction of the party in whose favor the verdict was rendered.” (Emphasis added.) 120 Ohio St. at 290, 166 N.E. 186. In fact, absent the consent of the party, a judicially ordered remittitur violates that party’s right to a jury trial. See, for example, Hetzel v. Prince William Cty. (1998), 523 U.S. 208, 211, 118 S.Ct. 1210, 140 L.Ed.2d 336, a per curiam decision in which the court stated that a “Court of Appeals’ writ of mandamus, requiring the District Court to enter judgment for a lesser amount than that determined by the jury without allowing petitioner the option of a new *499 trial, cannot be squared with the Seventh Amendment.” (Emphasis added.) Id., citing Kennon v. Gilmer (1889), 131 U.S. 22, 29-30, 9 S.Ct. 696, 33 L.Ed. 110.
{¶ 143} R.C. 2315.18 does not resemble remittitur in any of these respects, as it arbitrarily establishes, without the consideration of any facts in any particular case, that a jury’s award for noneconomic damages is excessive when it exceeds the statutory limit. More important, the statute reduces such a verdict without the consent of the party in whose favor the verdict was returned. Thus, the constitutionality of the remittitur doctrine does not support the conclusion that R.C. 2315.18 is constitutional.
{¶ 144} The majority also refers to several statutes that provide for treble damages found by a jury, and it reasons that if “[w]e have never held that the legislative choice to increase a jury award as a matter of law infringes upon the right to a trial by jury,” then “the corresponding decrease as a matter of law cannot logically violate that right.” (Emphasis sic.) I disagree, however, because a statutory damages multiplier is fundamentally different from the damages cap imposed by R.C. 2315.18.
{¶ 145} In enacting R.C. Chapter 1345, the Consumer Sales Practices Act (“CSPA”), for example, the General Assembly created a statutory cause of action to address a specific public policy, part of which is to punish violators and to deter future violations by allowing recovery of treble damages. As the United States Supreme Court has stated, in Texas Industries, Inc. v. Radcliff Materials, Inc. (1981), 451 U.S. 630, 639, 101 S.Ct. 2061, 68 L.Ed.2d 500, “[t]he very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers.”
{¶ 146} Thus, the CSPA increases the damages found by a jury with respect to a statutory cause of action in keeping with the punitive nature of the legislation. This has no similarity, however, to R.C. 2315.18, which applies to common-law causes of action and precludes a court from journalizing a judgment in conformity with a jury finding regarding compensatory damages in excess of the statutory limit. In my view, therefore, the fact that some statutes permit treble damages does not support the conclusion that the statutory cap on noneconomic damages is constitutional.
{¶ 147} Lastly, the majority cites Estate of Sisk v. Manzanares (D.Kan.2003), 270 F.Supp.2d 1265, which held that “statutory damage caps do not violate the Seventh Amendment [to the United States Constitution], largely because a court does not ‘reexamine’ a jury’s verdict or impose its own factual determination regarding what a proper award might be. Rather, the court simply implements a legislative policy decision to reduce the amount recoverable to that which the legislature deems reasonable.” Id. at 1278. As the United States Supreme Court has held, however, the Seventh Amendment to the United States Constitu *500 tion does not apply to the states. See Minneapolis & St. Louis RR. Co. v. Bombolis (1916), 241 U.S. 211, 36 S.Ct. 595, 60 L.Ed. 961. Thus, even though jurisprudence concerning the Seventh Amendment may be relevant, it is primarily the Ohio Constitution and this court’s precedent that guides our analysis of the right to trial by jury in Ohio.
{¶ 148} Moreover, I disagree with the conclusion that the majority draws from Manzanares, that the statutory cap on noneconomic damages is constitutional because it does not prevent the jury from performing its constitutional fact-finding role. The statute requires the trial court to disregard the jury’s findings of noneconomic damages in excess of the statutory limit and to enter judgment pursuant to the legislatively imposed maximum dollar amount. Thus, R.C. 2315.18 renders fact-finding with respect to noneconomic damages in excess of the statutory limit a meaningless exercise. In this regard, R.C. 2315.18 operates no differently than the statute that this court held unconstitutional in Sorrell because it authorized trial courts to “enter judgments in disregard of the jury’s verdict and thus violate[d] the plaintiffs right to have all facts determined by the jury, including damages.” Sorrell, 69 Ohio St.3d at 422, 633 N.E.2d 504.
{¶ 149} The supreme courts of other states have invalidated statutory damages caps for comparable reasons. In Moore v. Mobile Infirmary Assn. (1991), 592 So.2d 156, 164, the Supreme Court of Alabama stated as follows with respect to similar legislation that it held in violation of the right to trial by jury: “Because the statute caps the jury’s verdict automatically and absolutely, the jury’s function, to the extent the verdict exceeds the damages ceiling, assumes less than an advisory status.” (Emphasis sic.) Further, in Sofie v. Fibreboard Corp. (1989), 112 Wash.2d 636, 655, 771 P.2d 711, the Washington Supreme Court held that a legislative cap on noneconomic damages violated the state’s right-to-jury-trial provision and rejected an argument similar to the majority’s conclusion, here, stating, “Respondents essentially are saying that the right to trial by jury is not invaded if the jury is allowed to determine facts which go unheeded when the court issues its judgment. Such an argument pays lip service to the form of the jury but robs the institution of its function.” (Emphasis added.) See also Knowles ex rel. Knowles v. United States (In re Certification of Questions of Law), 1996 SD 10, 544 N.W.2d 183; Lakin v. Senco Prods., Inc. (1999), 329 Ore. 62, 987 P.2d 463; Smith v. Dept. of Ins. (Fla.1987), 507 So.2d 1080.
{¶ 150} For these reasons, I am of the view that the cap on noneconomic damages established by R.C. 2315.18 violates the right to a jury trial as provided by Section 5, Article I of the Ohio Constitution. Accordingly, I dissent from that portion of the majority opinion.
{¶ 151} I also write to address the position advanced in Justice Cupp’s concurring opinion to the effect that the statutory cap on noneconomic damages *501 does not violate Ohio’s constitutional right to a jury trial because “[t]he [legislature’s] power to alter or abolish a common-law cause of action necessarily includes the power to modify an associated remedy.”
{¶ 152} The concurrence cites precedent that the legislature may abolish or modify a common-law cause of action without violating due process and/or equal protection. See, e.g., Strock v. Pressnell (1988), 38 Ohio St.3d 207, 214, 527 N.E.2d 1235; Leis v. Cleveland Ry. Co. (1920), 101 Ohio St. 162, 128 N.E. 73. These cases, however, do not address the right to a jury trial provided by Section 5, Article I of the Ohio Constitution. This is an important distinction because the Constitution guarantees that where a party has a cause of action, it is entitled to have damages determined by a jury. Sorrell, 69 Ohio St.3d at 422, 633 N.E.2d 504. Thus, while it may be argued that the General Assembly may abolish a common-law cause of action in its entirety without violating due process or equal protection, that reasoning does not imply that the legislature may establish by statute the maximum amount a litigant may recover where the Constitution provides that a litigant has the right to have a jury make that determination.
{¶ 153} Here, R.C. 2315.18 abolishes neither a cause of action nor any right to recovery in its entirety. Instead, the statute places a specific limit on a party’s noneconomic damages based on the General Assembly’s judgment of what the maximum amount of recovery for a prevailing party should be, and in this way it has substituted its judgment for that of a jury in violation of Section 5, Article I of the Ohio Constitution. I agree with the reasoning of the Washington Supreme Court in Sofie, 112 Wash.2d at 652, 771 P.2d 711, which stated, “As long as the cause of action continues to exist and the litigants have access to a jury, that right of access remains as long as the cause of action does.” See also Moore v. Mobile Infirmary Assn., 592 So.2d 156.
{¶ 154} Finally, the concurring opinion laments that the majority has provided no historical analysis to support the contention that “the amount of damages recoverable under a common-law cause of action cannot be limited by action of the legislature because determining the amount of damages is reserved to the jury by the constitutional right to trial by jury.” In support of its contrary position, the concurrence provides authority that the constitutional right to a jury trial originated in response to what it terms “judicial overreaching.” This analysis, however, does not suggest that any other branch of government may overreach and interfere with the right to a jury trial or predetermine by legislation that which the Constitution has specified will be decided by jurors. Furthermore, notwithstanding that we have already held, in Sorrell, that the legislature may not encroach upon a party’s right to have a jury determine the amount of compensatory damages, the historical basis for preventing legislative intrusion on a party’s right to a jury trial exists in the language of Section 5, *502 Article I of the Ohio Constitution, adopted in 1802: “The right of trial by jury shall be inviolate * *
{¶ 155} This constitutional language, and the right it affords litigants in Ohio, has been understood since its incorporation into the Ohio Constitution. As discussed by Judge Ranney in his majority opinion, speaking of the right to a jury of 12 in a criminal trial in Work v. State (1853), 2 Ohio St. 296, 302:
{¶ 156} “What, then, is this right? It is nowhere defined or described in the constitution. It is spoken of as something already sufficiently understood, and referred to as a matter already familiar to the public mind. * * * The constitution furnishes no answer, nor was it necessary that it should. If ages of uninterrupted use can give significance to language, the right of jury trial and the habeas corpus stand as representatives of ideas as certain and definite as any other in the whole range of legal learning.”
{¶ 157} In his opinion, Judge Ranney noted that the Northwest Ordinance of 1787 “made an unalterable article of compact, that ‘the inhabitants of the said territory shall always be entitled to the benefit of the writ of habeas corpus, and of the trial by jury,’ ” id. at 303, quoting Section 14, Article II of the Northwest Ordinance, and he alluded to traces of the right being “found in the laws of all those nations which adopted the feudal system, ‘who had all of them a tribunal composed of twelve good men and true.’ ” Id. at 303-304.
{¶ 158} Judge Ranney stated that “it is beyond the power of the General Assembly to impair the right, or materially change its character; that the number of jurors cannot be diminished, or a verdict authorized short of a unanimous concurrence of all the jurors. It follows that the act under which this conviction was obtained, in so far as it provides for a jury of six only, and authorizes a conviction upon their finding, is unconstitutional and void.” Id. at 306.
{¶ 159} In concluding the opinion, the court stated, “We have deemed it our duty to meet and arrest, at the outset, what we cannot but regard as an infringement of a great constitutional right — not in a very flagrant manner, but, nevertheless, opening the door to further encroachments.” Id.
{¶ 160} In Gibbs v. Girard (1913), 88 Ohio St. 34, 102 N.E. 299, which quoted extensively, with approval and admiration, from Judge Ranney’s opinion in Work, this court reaffirmed the right to have a jury determine every question of disputed fact in civil cases and stated that “[t]o hold otherwise would not only commit but permit, in a multitude of cases, a sinister and indirect invasion and usurpation of the right of trial by jury. A legislative act impairing it would be clearly unconstitutional.” Id. at 43, 102 N.E. 299.
*503 {¶ 161} The syllabus in Gibbs summarizes the case, holding as follows: “The right of trial by jury, being guaranteed to all our citizens by the constitution of the state, cannot be invaded or violated by either legislative act or judicial order or decree.” Id. at paragraph two of the syllabus.
{¶ 162} Accordingly, it is my view that R.C. 2315.18, which substitutes the judgment of the General Assembly for that of a jury, violates Section 5, Article I of the Ohio Constitution and therefore is unconstitutional and opens the door to further encroachments. Therefore, I dissent from that portion of the majority opinion.