[Cite as *AM & JV, L.L.C. v. MyFlori, L.L.C.*, 2018-Ohio-600.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| AM and JV, LLC et al., | : | |
| Plaintiffs-Appellees, | : | |
| | : | No. 16AP-713 |
| v. | : | (C.P.C. No. 13CV-4488) |
| MyFlori, LLC et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellants, | : | |
| John Does 1-5, | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on February 15, 2018

**On brief:** *The Donnell Law Group*, and *Titus G. Donnell*, for appellees AM and JV, LLC, and Aleksandar G. Mitrevski. **Argued:** *Titus G. Donnell.*

**On brief:** *Anthony Law LLC, Michael J. Anthony, Vincent P. Zuccaro*, and *Andrew D. Randol*, for appellants MyFlori, LLC, and Jim Velio. **Argued:** *Andrew D. Randol.*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendants-appellants, Jim Velio ("Velio") and MyFlori, LLC ("MyFlori") (collectively "appellants"), appeal the September 14, 2016 decision and entry of the Franklin County Court of Common Pleas. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} This matter arises out of a dispute between Velio and Aleksandar G. Mitrevski ("Mitrevski"), joint owners of the business venture AM and JV, LLC ("AM and

JV").  Prior to entering into business with Velio, Mitrevski operated a used car dealership at 1940 South High Street in Columbus ("the property"), a property which he owned.

{¶ 3}  In 2008, Velio approached Mitrevski about becoming a partner in Mitrevski's dealership.  Following negotiations, Mitrevski and Velio formed AM and JV as joint owners pursuant to an operating agreement that both signed.  Velio agreed to provide Mitrevksi with $195,000 and to invest an additional $50,000 in the business. In exchange, Mitrevski transferred the title for the property to AM and JV and agreed to invest $50,000 in the business. Mitrevski was responsible for the day-to-day operations of the dealership and was to receive a salary.  Profit from the business was to be split equally between Mitrevski and Velio.  The operating agreement specifically provided that "[t]he unanimous consent of the Members shall be required before the Company may * * * [a]quire, sell, lease or other transfer or disposition of, or mortgage, pledge or the placing or suffering of any other encumbrance on or affecting all of the Company's property or any portion thereof."  (Appellant's Sept. 14, 2015 Motion for New Trial, Ex. B, Operating Agreement at 5-6.)

{¶ 4}  According to Mitrevski, in January 2010, Toty Auto Repair ("Toty") began renting part of the property for $2,000 per month, which he split with Velio.  In June 2010, Mitrevski and Velio agreed to sell the property because the business was failing. While they waited for the property to sell, Mitrevski claimed that Velio agreed to take all the rent money, and Mitrevski would take any income from the used car dealership.

{¶ 5}  Around October 2010, Mitrevski claimed that Velio ordered him to leave the property.  As a result, Mitrevski took some of AM and JV's cars from the property to a new lot across the street at 1872 South Pearl Street and began operating a used car dealership as a separate, new business from AM and JV.  According to Mitrevski, Velio agreed to split with Mitrevski the rent he received from the property because Mitrevski had moved. Thereafter, Mitrevski attempted to sell the property to Spartak Selimaj ("Selimaj"). Mitrevski stated that Selimaj paid both him and Velio earnest money as a down payment for the property, but canceled the deal after discovering the property had been transferred from AM and JV to MyFlori, a company owned by Velio.  Mitrevski testified he was shocked to discover that the property had been transferred to MyFlori.

{¶ 6}  According to Velio, in 2010, Toty began renting part of the property for $1,500 per month, and later began paying $2,000 per month.  Velio claimed that, in June 2010, Mitrevski bought a car for himself and told Velio to take the rent for himself.  In February 2011, Velio confronted Mitrevski because he believed he was stealing from the business.  According to Velio, Mitrevski told him to "[k]eep the property."  (Tr. Vol. II at 279.)

{¶ 7}  Velio stated that Toty, in March 2011, agreed to lease the property from Velio for a duration of three years for $2,500 per month, increasing 3 percent annually.  Toty made payments under the lease directly to Velio.  According to Velio, in March 2011, Mitrevski had "remove[d] himself completely from the property" and "was in [a] different property and business."  (Tr. Vol. II at 216-17.)  Velio did not share any of the rent he received under the lease with Mitrevski.  Velio stated that, in April 2012, after the deal with Selimaj failed, he transferred the property to his real estate holding company, MyFlori.

{¶ 8}  Selimaj testified that, in June 2011, Mitrevski approached him with an offer to sell the property.  In January or February 2012, Selimaj paid earnest money as a down payment for the property, but stated the sale was delayed because there was a tenant occupying the property.  In April 2012, Selimaj discovered the property had been transferred from AM and JV to another company and, as a result, demanded his earnest money back. Selimaj testified Mitrevski reacted with surprise when Selimaj informed him that the property had been transferred from AM and JV to another company.  Selimaj ultimately received his earnest money back from both Mitrevski and Velio.

{¶ 9}  On April 22, 2013, plaintiffs-appellees, Mitrevski and AM and JV (collectively "appellees"), filed a complaint in the trial court asserting the following three causes of action: quiet title against MyFlori, conversion against appellants, and conversion of rental income against appellants.  On June 7, 2013, appellants filed an answer and counterclaim.  Appellants made the following counterclaims: breach of contract, breach of fiduciary duty, fraud, conversion, negligent misrepresentation, and promissory estoppel.  Appellants also sought punitive damages and a declaration that Velio was the sole member of AM and JV.  On July 8, 2013, appellees filed an answer to appellants' counterclaims.

{¶ 10} On July 9, 2014, appellees filed a motion for partial summary judgment. On August 22, 2014, appellants filed a memorandum contra appellees' motion for partial summary judgment. On September 2, 2014, appellees filed a reply to appellants' memorandum contra appellees' motion for partial summary judgment. On September 5, 2014, the trial court issued an order referring the matter to a magistrate. On September 8, 2014, the magistrate filed a decision denying appellees' motion for partial summary judgment.

{¶ 11} On September 19, 2014, appellees filed an objection to the magistrate's decision. On October 30, 2014, appellants filed a reply to appellees' objection. On February 2, 2015, the trial court denied appellees' objection to the magistrate's decision and adopted such decision as its own.

{¶ 12} On February 9, 2015, the matter proceeded to a jury trial at which the magistrate presided. On February 17, 2015, the jury rendered the following verdict: (1) the property remained an asset of AM and JV, (2) rent in the amount of $110,727 which had been received by Velio should be returned to AM and JV, and (3) Velio was entitled to damages in the amount of $43,282.75 on the claims of conversion of property and breach of fiduciary duty with regard to Mitrevski's conversion of motor vehicles belonging to AM and JV. On February 18, 2015, the magistrate filed a decision following the jury trial.

{¶ 13} On September 4, 2015, appellants filed a motion for new trial or, in the alternative, a motion for additur and remittitur. On the same date, appellants filed a separate motion for judgment notwithstanding the verdict or, in the alternative, a motion for new trial. On October 16, 2015, appellees filed responses to appellants' September 4, 2015 motions. On November 6, 2015, appellants filed replies to appellees' October 16, 2015 responses. On December 23, 2015, the magistrate filed a decision denying appellants' September 4, 2015 motions.

{¶ 14} On March 1, 2016, appellants filed objections to the magistrate's February 18, 2015 decision following jury trial. On the same date, appellants separately filed objections to the magistrate's December 23, 2015 decision. On March 30, 2016, appellees filed responses to appellants' March 1, 2016 objections. On April 5, 2016, appellants filed replies to appellees' March 30, 2016 responses. On September 14, 2016,

the trial court filed a decision and entry overruling appellants' objections to the magistrate's February 18, 2015 decision following jury trial and overruling appellants' objections to the magistrate's December 23, 2015 decision denying appellants' motions for new trial, motion for additur and remittitur, and motion for judgment notwithstanding the verdict.

## II.  Assignments of Error

{¶ 15} Appellants appeal and assign the following two assignments of error for our review:

> I. The Trial Court Erred in Failing to Grant Defendant-Appellants' Motion for New Trial, or in the Alternative, Motion for Additur.
>
> II. The Trial Court Erred in Failing to Grant Defendants' Motion for Remittitur.

## III.  Discussion

{¶ 16} In their two assignments of error, appellants argue the trial court erred by overruling their objections to the magistrate's decision denying their motion for new trial or, in the alternative, their motions for additur and remittitur.

## A.  Applicable Law

{¶ 17} Civ.R. 59 governs motions for a new trial. Pursuant to Civ.R. 59(A)(6), a trial court may order a new trial on all or part of the issues if "[t]he judgment is not sustained by the weight of the evidence."  "When presented with a motion premised on Civ.R. 59(A)(6), a trial court must weigh the evidence and consider the credibility of the witnesses to determine whether the manifest weight of the evidence supports the judgment."  *Ellinger v. Ho*, 10th Dist. No. 08AP-1079, 2010-Ohio-553, ¶ 61, citing *Salvatore v. Findley*, 10th Dist. No. 07AP-793, 2008-Ohio-3294, ¶ 24.  "Unlike directed verdicts and judgments notwithstanding the verdict, an order for a new trial does not dispose of litigation; instead, its purpose is to prevent ' "miscarriages of justice which sometimes occur at the hands of juries," ' by presenting the same matter to a new jury." *Malone v. Courtyard by Marriott Ltd. Partnership*, 74 Ohio St.3d 440, 448 (1996), quoting *Rohde v. Farmer*, 23 Ohio St.2d 82, 93 (1970), quoting *Holland v. Brown*, 15 Utah 2d 422, 426 (1964).

## B. Standard of Review

{¶ 18} Civ.R. 53 governs proceedings before a magistrate, including objections to a magistrate's decision. In ruling on objections to a magistrate's decision, the trial court must undertake an independent review of the matters objected to in order "to ascertain [whether] the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). In accordance with Civ.R. 53, a trial court reviews a magistrate's decision de novo. *James v. My Cute Car, LLC*, 10th Dist. No. 16AP-603, 2017-Ohio-1291, ¶ 13. "The standard of review on appeal from a trial court judgment that adopts a magistrate's decision varies with the nature of the issues that were (1) preserved for review through objections before the trial court and (2) raised on appeal by assignment of error." *In re Guardianship of Schwarzbach*, 10th Dist. No. 16AP-670, 2017-Ohio-7299, ¶ 14. We review the trial court's decision on a motion for new trial under Civ.R. 59(A)(6) for an abuse of discretion. *Kenner v. Grant/Riverside Med. Care Found.*, 10th Dist. No. 15AP-982, 2017-Ohio-1349, ¶ 23; *Mannion v. Sandel*, 91 Ohio St.3d 318, 321 (2001), quoting *Rohde* at paragraph one of the syllabus; *Ellinger* at ¶ 61, citing *Harris v. Mt. Sinai Med. Ctr.*, 116 Ohio St.3d 139, 2007-Ohio-5587, ¶ 39. An abuse of discretion occurs when a court's judgment is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 19} In the context of a motion for new trial, "the abuse of discretion standard requires a reviewing court to 'view the evidence favorably to the trial court's action rather than to the original jury's verdict.' " *Malone* at 448, quoting *Rohde* at 94. "This deference to a trial court's grant of a new trial stems in part from the recognition that the trial judge is better situated than a reviewing court to pass on questions of witness credibility and the 'surrounding circumstances and atmosphere of the trial.' " *Id.*, quoting *Rohde* at 94.

## C. Motion for New Trial or Additur

{¶ 20} In their first assignment of error, appellants assert the trial court erred in denying their motion for new trial or, in the alternative, motion for additur because the jury's award of $40,000 to Velio as a result of Mitrevski's conversion of business assets was inadequate.

{¶ 21} "In Ohio, additur is only available where agreed to by the defendant as an alternative to the trial court's granting a plaintiff's motion for a new trial." *Fares v.*

*Scheussler*, 10th Dist. No. 93APE10-1373 (Mar. 31, 1994), citing McCormac, *Ohio Civil Rules of Practice*, Section 13.30 at 383 (2d Ed.1992). *See Allen v. Znidarsic Bros., Inc.*, 11th Dist. No. 99-L-088 (Dec. 29, 2000), citing *Midwest Elastomers, Inc. v. Piqua Steel Co.*, 3d Dist. No. 2-82-15 (Aug. 16, 1983). Therefore, in order to obtain additur, a plaintiff must first demonstrate entitlement to a new trial under Civ.R. 59. *Fares*.

{¶ 22} "Generally, a new trial should be granted pursuant to Civ.R. 59(A)(6) where it appears that the jury awarded inadequate damages because it failed to consider an element of damages established by uncontroverted expert testimony." *Dillon v. Bundy*, 72 Ohio App.3d 767, 773 (10th Dist.1991). *See Fares*; *Baum v. Augenstein*, 10 Ohio App.3d 106, 108 (10th Dist.1983) ("A new trial is warranted on the ground of inadequacy of damages where it appears that the jury failed to consider some elements of damages."). *See Frazier v. Swierkos*, 183 Ohio App.3d 77, 2009-Ohio-3353, ¶ 22 (7th Dist.), quoting *Bailey v. Allberry*, 88 Ohio App.3d 432, 435 (2d Dist.1993) (" '[I]n order to set aside a damage award as inadequate and against the manifest weight of the evidence, a reviewing court must determine that the verdict is so gross as to shock the sense of justice and fairness, cannot be reconciled with the undisputed evidence in the case, or is the result of an apparent failure by the jury to include all the items of damage making up the plaintiff's claim.' "). (Emphasis omitted.) "However, if the verdict is supported by substantial competent, credible evidence, a trial court abuses its discretion in granting a new trial based upon the weight of the evidence." *Dillon* at 773-74, citing *Hancock v. Norfolk & Western Ry. Co.*, 39 Ohio App.3d 77, 81 (8th Dist.1987).

{¶ 23} Appellants make two arguments in support of their contention that the jury's award of damages for Mitrevski's conversion was inadequate. First, appellants argue that Velio is entitled to half of AM and JV's ending inventory for 2010. Specifically, appellants contend that:

> Because jury interrogatories Nos. 9-15 specifically found that Velio was deprived of his ownership interest in the vehicles, funds, and monies held by [AM and JV] after August or September of 2010, Velio should be entitled to one half of the $80,000 on [AM and JV's] 2010 [tax] return, which is a reflection of the assets of that business at the end of 2010. Thus, the jury should have awarded Velio one half of these assets i.e. $40,000.

(Appellants' Brief at 20-21.)   Consistent with appellants' contention, the jury awarded Velio $40,000 in damages for his counterclaim for conversion.

{¶ 24} Second, appellants argue that "Velio is entitled to $78,004.60" because "[e]xhibits introduced at trial prove that between August of 2010 and March of 2011, Mitrevski sold $156,009.21 worth of vehicles back to auto auctioneers, under the dealer license used for [AM and JV], with the proceeds going directly to [Mitrevski's new dealership's bank] accounts, which Velio had no knowledge of." (Appellants' Brief at 24; 21.) The exhibits to which appellants point were admitted as evidence at trial and considered by the trial court in reviewing appellants' motion for new trial.  "[A] jury is entitled to 'believe all, part or none of a witness's testimony.' " *State v. Simmons*, 10th Dist. No. 15AP-708, 2017-Ohio-1348, ¶ 35 (10th Dist.), quoting *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964). Even if the jury gave weight to appellants' exhibits, they need not have concluded that Velio had an ownership interest in the monies deposited in Mitrevski's new bank accounts.  *Fares* (finding that even though testimony "went unchallenged by defendant, the jury was still entitled to disbelieve the testimony and award no money damages"). Therefore, we cannot find the trial court erred in denying appellants' motion for new trial or, in the alternative, motion for additur.

{¶ 25} Accordingly, we overrule appellants' first assignment of error.

## D.  Remittitur

{¶ 26} In their second assignment of error, appellants assert the trial court erred in denying their motion for remittitur because the evidence at trial demonstrated that appellants paid taxes on the property from 2011 through trial in the amount of $16,872.73, which appellants assert "should have been deducted from the total of $110,727.00 that [AM and JV] was awarded against Velio for conversion of rental income." (Appellants' Brief at 25.)

{¶ 27} Although not expressly provided in the Ohio Civil Rules, "[a] court has the inherent authority to remit an excessive award, assuming it is not tainted with passion or prejudice, to an amount supported by the weight of the evidence." *Wightman v. Consol. Rail Corp.*, 86 Ohio St.3d 431, 444 (1999). *See also Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 653 (1994), fn. 6.  The following four factors must be present for a trial

court to order remittitur: " '(1) unliquidated damages are assessed by a jury, (2) the verdict is not influenced by passion or prejudice, (3) the award is excessive, and (4) the plaintiff agrees to the reduction in damages.' "  (Emphasis omitted.)  *Harris* at ¶ 39, quoting *Wightman* at 444.  "The power to order a remittitur is not limited to trial courts." *Dardinger v. Anthem Blue Cross & Blue Shield*, 98 Ohio St.3d 77, 2002-Ohio-7113, ¶ 184, citing *Shaffer v. Maier*, 68 Ohio St.3d 416 (1994).  *See Chester Park Co. v. Schulte*, 120 Ohio St. 273 (1929), paragraph five of the syllabus.  "Thus, an appellate court may order a remittitur to the amount warranted by the evidence if it determines that a damages award is not supported by the evidence."  *Wells v. C. J. Mahan Constr. Co.*, 10th Dist. No. 05AP-180, 2006-Ohio-1831, ¶ 39.

{¶ 28} Here, Mitrevski testified he paid property taxes while at the property, but did not after he left.  Velio testified he began paying property taxes on the property in question in the second half of 2011.  Appellants submitted an exhibit showing property taxes paid from June 2011 through June 2014 in the amount of $16,872.73.

{¶ 29} Appellants contend the above establishes Velio paid the property taxes for the period in question, and that it was manifest error for the jury to have failed to reduce the award of damages for conversion of rental income by the amount of taxes paid. Although Mitrevski stated he did not pay the property taxes after he vacated the property, the jury need not have accepted Velio's testimony that he, in fact, paid the property taxes. At trial, and on appeal, appellees argued the testimony and records were insufficient to establish that Velio paid the taxes.

{¶ 30} Furthermore, at trial, Velio stated that he attempted to evict Toty because it was "behind on the rent, not paying property taxes."  (Tr. Vol. II at 286.)  This testimony raises the question as to whether Velio or Toty was responsible for paying the property taxes during the period in question.  Although Velio points to auditor's records showing the property taxes were paid, he does not point to his own records showing payments matching the amounts in question.  As a result, we find that the jury was not required to believe Velio's testimony that he paid property taxes in the claimed amount and, therefore, cannot find that the trial court erred in denying appellants' motion for remittitur.

{¶ 31} Accordingly, appellants' second assignment of error is overruled.

## IV.  Conclusion

{¶ 32} Having overruled appellants' first and second assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN, P.J., and TYACK, J., concur.

―――――――――